Don JOHNSON, Appellant,

v.

W. O. MEDLOCK and Arvil Satterfield, d/b/a Mulberry Lumber Co., and W. D. McDowell, Respondents.

No. 24672.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Robert C. Frith, Chillicothe, for appellant.

Morris A. Shenker and R. J. Slater, St. Louis, for W. O. Medlock and Arvil Satterfield, d/b/a Mulberry Lumber Co.

MAUGHMER, Commissioner.

Workmen's Compensation case. The claimant, Don Johnson, was a log sawyer. While at work a tree limb fell on him. He suffered a broken back and other injuries. His claim for workmen's compensation was filed against W. D. McDowell and against the respondents, W. O. Medlock and Arvil Satterfield, d/b/a Mulberry Lumber Company. There is no insurer liability coverage. After a hearing, the referee entered an award in the total sum of $10,099.55 against all three defendants. Mr. W. D. McDowell filed no application for review by the commission. The award and judgment as to him has become final and he is no longer an actual participant in this litigation. Mr. Medlock and Mr. Satterfield, d/b/a Mulberry Lumber Company, did apply for a review. The Industrial Commission in a 2–1 decision affirmed the award of the referee. An appeal to the circuit court resulted in a reversal. It is the appeal from that judgment which is before us.

It is claimant's contention that he was a statutory employee of Mulberry. The only question presented is on the issue of liability. The scope of appellate review in a workmen's compensation appeal is well stated in Long v. Mississippi

Lime Co. of Missouri, Mo.App., 257 S.W. 2d 167, 170. We quote from that opinion:

"An appellate court, in reviewing the evidence upon the basis of which the industrial commission made its award, must view the evidence in the light most favorable to the successful party below. Harper v. Home Imp. Co., Mo.Sup., 235 S.W.2d 558. Neither the circuit court nor the appellate court may substitute its judgment on the evidence for that of the commission. Both courts are authorized and bound to decide whether the commission reasonably could have made its findings and reached its result upon consideration of all of the evidence before it, i. e. whether the award made by the commission is supported by competent and substantial evidence upon the whole record, Constitution of 1945, Art. V, § 22, V.A.M.S. * * * and cases cited, and to set aside decisions clearly contrary to the overwhelming weight of the evidence".

See also Liverman v. Wagner, Mo.App., 384 S.W.2d 107. However, we must also remember that plaintiff has the burden of proof to bring himself within the provisions of the Act. Shireman v. Rainen Home Furnishers, Inc., Mo.App., 402 S.W.2d 64, 67.

Section 83.05, V.A.M.R. requires (a) the statement of facts in appellant's brief shall include specific page references to the transcript; (b) the points shall state what actions or rulings of the court are claimed to be erroneous and why the court was wrong. Setting out abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this rule. Appellant's statement of facts contain not a single page reference to the transcript. His points are three in number: (1) he says the Act covers Johnson whether he was an independent contractor or a subcontractor: (2) on appeal all reasonable inferences must be drawn in support of the commission's finding and viewed in the light most

favorable to its support: (3) McDowell and Mulberry were engaged in a joint venture and Johnson was a statutory employee. The brief is not in compliance with the rule. However, we prefer to dispose of this appeal on the merits, rather than on the grounds of technical noncompliance.

The claimant, Don Johnson, lived near Chula, in Grundy County, Missouri. He said he had lived there "off and on all my life". His father operated a saw mill in that area and at times claimant had worked for him although his occupation most of the time was cutting saw logs in the timber. A few months before the accident which occurred on May 25, 1964, he had been employed to cut saw logs by J. W. McDowell, originally a defendant in this lawsuit. At that time Mr. McDowell was sitting in a pickup truck which had the name "Mulberry Lumber Company" stamped on the side. Mr. Johnson said McDowell was hauling logs from north of Trenton to a saw mill in Chillicothe, Missouri. He said seven others besides himself were working on the Shull and Grossman land north of Trenton where he was hurt. Some of these "were driving trucks, some cutting, one operating the crawler".

The claimant's services were paid for by Mr. McDowell. He was paid 50 cents per hundred for cutting cottonwood (softwood) and 75 cents to 85 cents for cutting hardwood. It was his estimate that he earned about $100 per week. Immediately before the McDowell employment, claimant had been employed by Mr. Moore and Mr. Grise, doing the same kind of work, at the same pay and in the same general neighborhood. None of these employers withheld any funds from his pay for income tax or for social security. In his work, Mr. Johnson used his own equipment, including chain saw, furnished the gas for its operation and made his own repairs. He never helped load the logs. He was paid with personal checks signed by Mr. McDowell. He selected his own hours for work—starting and quitting whenever he chose to do so. He was cutting hardwood (Elm) when

he was injured. The evidence just recounted is, we believe, a fair summarization of plaintiff's testimony.

Mary A. Jensen was called as a witness by claimant. She owned an acreage near Chula. On February 4, 1964, Mrs. Jensen and her husband leased a two acre tract therefrom to be used as a "saw mill and mill yard" for a monthly rental of $35. The written lease covering this transaction was signed by the Jensens and "J. W. McDowell". In the body of the agreement the lessee is described as "J. W. McDowell, representing Mulberry Lumber Company of Mulberry, Arkansas". Mrs. Jensen stated without objection that McDowell told her "he was leasing for the Mulberry Lumber Company, but it would be his saw mill, his personal saw mill" and he would operate it for the Mulberry Lumber Company.

Mr. Arthur Wilson is a real estate broker, living in Chillicothe, Missouri. He was the agent and writer of a timber sale contract made by E. G. Grossman and Jay Shull to J. W. McDowell. A copy of the sales contract is in evidence except the signatures which were apparently not decipherable by the court reporter. The body of the instrument recites that the agreement is between Grossman and Shull, parties of the first part, and "J. W. McDowell, party of the second part". The contract also recites receipt of $1900 "in the form of a check drawn by Mulberry Lumber Company". Mr. Wilson's dealings in this matter were all with Mr. McDowell—none with Mulberry.

Mr. W. O. Medlock, one of the defendants, was called as a witness by claimant. He testified that in May, 1964, the Mulberry Lumber Company was a partnership, and that he and the defendant Arvil Satterfield were the partners. He said their one place of business was in Mulberry, Arkansas; that they employed about 50 persons there and owned five trucks and trailers. They leased a Chevrolet pickup, an International two-ton tractor and a John Deere crawler to J. W. McDowell, located in Livingston County, Missouri. He stated that McDowell never had been their employee, but that they financed him and others in their efforts to procure softwood lumber. He denied ever authorizing McDowell to act for Mulberry or use the name "Mulberry Lumber Company". He said McDowell was to use the equipment to "log the timber to a saw mill which Ray Cunningham was operating out here on Highway 65" near Chillicothe. Mr. Medlock said Cunningham kept the lumber until it was dry and the cottonwood was then loaded on Mulberry trucks and Cunningham was paid $60 per thousand feet for it. Cunningham sold the hardwood lumber to other purchasers. The witness admitted advancing a check for $1900 to McDowell for the purchase of a tract of timber. Mr. Medlock denied that Mulberry ever bought any logs in Missouri—only lumber. He said also that they bought only cottonwood lumber in Missouri. He said it was their practice to advance money as they did to McDowell and Cunningham and secure reimbursement in the form of lumber.

Edward D. Posey leased a tract to Ray Cunningham for operation of a saw mill. A short time later the mill was moved. A Mulberry truck came for the last of the lumber. Mr. Posey claimed four months' rent was due and would not let the driver have the lumber unless and until the rent was paid. Mr. Posey said the driver called Mulberry and then gave Mr. Posey a check for the rent and moved the lumber.

Mr. W. O. Medlock also testified as a witness for defendants. He said they never bought hardwood lumber in Missouri because the price and the long heavy haul made it too expensive. It appears affirmatively and is uncontradicted that Mulberry is a manufacturing company and buys only finished lumber. There is no evidence that McDowell had any authority to act for Mulberry unless it be deduced from the fact that the Mulberry name was on one of the trucks he was using or from the fact that Mulberry advanced funds to him. Mul-

berry never bought any logs or lumber from McDowell, but rather from the Chillicothe Lumber Company (Cunningham), where McDowell's production was sold and delivered. Section 287.040(1), V.A.M.S. provides:

"Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business".

■ This court in Shireman v. Rainen Home Furnishers, Inc., supra, 402 S.W.2d at page 68, listed the essential requirements for a statutory employee-employer relationship to come into being:

"Under this statute our courts have repeatedly held that three elements must be present before one can be held to be a statutory employee. The evidence must show (1) that the work was performed under a contract, (2) that the injury occurred on or about the premises of the employer, and (3) that the injury must have occurred while the employee was doing work in the usual course of employer's business".

In Baker v. Iowa-Missouri Walnut Log Co., Mo.App., 270 S.W.2d 73, 75, 76, 77, claimant was cutting logs in the timber when he was injured. The commission found for the employee, the circuit court reversed, but this court affirmed the commission award. In that case the alleged statutory employer was a log company engaged in the business of buying walnut logs, fabricating walnut timber and manufacturing gun stocks. *Eldon* Baker for and on behalf of the company, located walnut trees and purchased same for the company. He employed *Earl* Baker, the claimant, to process these trees into logs and stumps and to deliver them in company trucks directly to the log company for shipment by rail or truck. *Earl* Baker was *Eldon* Baker's employee, and was injured while cutting walnut logs on a tract containing walnut timber which had been purchased by *Eldon* Baker for the log company. We quote excerpts from the opinion which indicates the court's reasoning in ruling that the elements of a statutory employee relationship existed.

"The evidence clearly supports the conclusion that the Log Company owned these trees and the logs and stumps which were produced therefrom; that Eldon Baker did not own the trees, logs or stumps, and was not selling them to the Log Company; and therefore the relationship of vendor and vendee did not exist.

\*     \*     \*     \*     \*     \*

"Under Section 287.040, subd. 1, if *Eldon* Baker was doing work for the Log Company, *under contract, on or about the premises* of the Log Company, and in an operation of the *usual business* which the Log Company was there carrying on, then the Log Company would be liable to Earl Baker, because the statute specifically provides that such person (Log Company) shall be liable to the 'contractor, his subcontractors, and *their employees, * \* \*'*.

"In Sargent v. Clements, 337 Mo. 1127, 88 S.W.2d 174, 178, and State ex rel. Potashnick v. Fullbright, 350 Mo. 858, 169 S.W.2d 59, 61, the court construed the word 'premises' as follows: 'that "premises" as there used contemplates any place, *under the exclusive control of the employer,* where the employer's usual business is being carried on or conducted, \*   \*   \*'.

\*     \*     \*     \*     \*     \*

"In the Potashnick case, the court held that, in order for the *premises* to be *under the exclusive control of the employer,* the *premises* must be such that the public does not have an equal right to use

them along with the independent contractor or his employees. In distinguishing other cases the court said, 350 Mo. 858, 169 S.W.2d 62: 'In other cases cited, the principal employer, sought to be held, did have *exclusive control* of the premises, where the independent contractor was working, *by lease or other arrangement* with the owner of lands not being used for any public purpose; and he was not an invitee only * * *'.

\* \* \* \* \* \*

"In defining the phrase ' "premises of the *employer*" ', the court said (Crabtree v. Ramsey), [Mo.App.,] 115 S.W.2d [14] 16: '[I]t appears to us that in order for an injury to be considered as happening on the *premises* of the employer, it must have occurred on property *owned, leased,* or *controlled* by the employer, * * *' ".

We have read the cases cited by appellant and those referred to by the referee. Those opinions are not in disagreement with the holdings herein referred to. It seems clear from the evidence produced in the instant case that: (1) claimant's work cutting logs (including hardwood logs) was not done under contract with Mulberry. His employment agreement was with McDowell. He was paid by McDowell and his product went to Chillicothe Lumber Company. It would require pure speculation to find that McDowell was authorized to contract with claimant on behalf of Mulberry, and that, therefore, Mulberry should be ruled to be his employer; (2) we are unable to conclude from the evidence presented that the cutting of logs on the Shull-Grossman or any other tract north of Trenton was on Mulberry's premises or on premises under the exclusive control of Mulberry either through lease or by any other arrangement. McDowell owned the logs and sold them to Cunningham, who in turn processed them into lumber, a part

of which (cottonwood) was sold to Mulberry. The timber sales contracts were with McDowell. The saw mill or storage lot was leased by McDowell from Mr. and Mrs. Jensen. The fact that Mulberry advanced funds to McDowell only shows advancement of funds. It cannot be construed as amounting to substantial evidence of agency or of an employer-employee relationship existing between McDowell and Mulberry; (3) Was the cutting of both hardwood and cottonwood logs by claimant "an operation of usual business which he (employer-Mulberry) there carries on"? The evidence affirmatively shows that Mulberry bought only lumber —not logs—bought only cottonwood and no hardwood. McDowell sold the logs not to Mulberry, but to others and Mulberry bought the finished and dried lumber product from those others mostly if not entirely from Mr. Cunningham.

We conclude that there was no substantial evidence adduced from which the commission could properly rule that claimant was a statutory employee of Mulberry. We believe, therefore, that the trial court was right when it overturned the finding of the commission.

The order and judgment of the trial court reversing the award of the Industrial Commission and remanding the cause to the Commission with directions to enter judgment for respondents, W. O. Medlock and Arvil Satterfield, d/b/a Mulberry Lumber Company, are affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.