**Carter COUNTS, Employee, Plaintiff-Appellant,**

**v.**

**EAST PERRY LUMBER COMPANY, Employer, and Hartford Accident & Indemnity Company, Insurer, Defendants-Respondents.**

**No. 33554.**

St. Louis Court of Appeals, Missouri.

Nov. 24, 1970.

Motion for Rehearing or for Transfer to Supreme Court Denied Dec. 30, 1970.

Application to Transfer Denied Feb. 8, 1971.

that claimant employee was injured May 26, 1966; and that the accident occurred while claimant was on the company's premises unloading logs, which was part of his employer's business, when a log fell on him.

The answer of East Perry Lumber Company and its insurance carrier consisted of a specific denial that claimant was at the time of the accident in the employ of East Perry Lumber Company, and a general denial of all other allegations contained in the claim for compensation. The Referee before whom the case was tried found that Carter Counts was not, on May 26, 1966, an employee of East Perry Lumber Company within the meaning of the Missouri Workmen's Compensation Law, and denied compensation. On application, there was a review by the full Commission resulting in an affirmance of the Referee's finding and order. The Commission's finding was affirmed by the Circuit Court. From the judgment of the Circuit Court claimant appeals.

The sole question on this appeal is whether or not on the whole record the finding of the Commission is supported by competent and substantial evidence, and not contrary to the overwhelming weight of the evidence. Claimant contends the evidence shows he was a statutory employee of East Perry Lumber Company as such relationship is defined by § 287.-040(1), RSMo 1959, V.A.M.S. East Perry and its insurer contend that under the evidence adduced the Commission reasonably could have found claimant was not a statutory employee, but that the relationship between the parties was that of vendor and vendee.

Mogab, Hughes & Green, St. Louis, John C. Hannegan, St. Charles, for plaintiff-appellant.

Evans & Dixon, John R. Dixon, St. Louis, for defendants-respondents.

LYON ANDERSON, Special Commissioner.

This is a proceeding under the Missouri Workmen's Compensation Law. Section 287.010, RSMo 1959, V.A.M.S., et seq. The claim was filed by Carter Counts against East Perry Lumber Company and its insurance carrier, Hartford Accident & Indemnity Company. The claim alleged

In determining the issue before us we must review the evidence in a light most favorable to the finding and award of the Commission, and consider all favorable inferences which the Commission had a right to draw from the evidence before it. Thacker v. Massman Const. Co., Mo., 247 S.W.2d 623. Of course, in the discharge

of our duty as a reviewing court we give due regard to findings, involving credibility, made by those before the witnesses gave oral testimony. We may not substitute our judgment for that of the Commission, but are authorized only to decide whether such tribunal could have reasonably made its finding and reached its decision upon a consideration of all the evidence before it, and to set aside its decision clearly contrary to the overwhelming weight of the evidence. Wood v. Wagner Elec. Corp., 355 Mo. 670, 197 S.W.2d 647.

Carter Counts was injured on May 26, 1966, while on the premises of East Perry Lumber Company. He came to the Lumber Company with a truckload of logs which he had cut from timber owned by a farmer named Mattingley. There were ten oak logs on the truck. The logs were from 16 to 24 inches in diameter, and 10 to 16 feet in length. Each log weighed about 1200 lbs. The truck was a '58 GMC. It had a flat bed 7½ feet wide and 14 feet long. There were no stakes on it, and no mechanism for unloading heavy logs such as were on claimant's truck at the time. The logs were always removed from the truck by an employee of East Perry using a fork lift for that purpose after Counts had removed the chains which held the logs on the truck. The truck and the chains belonged to claimant. Just prior to the accident claimant had removed the chains, and was walking toward the truck to remove a piece of the chain that was hanging from the truck. While doing this the top log fell from the truck and injured his right foot and ankle.

Claimant lived at Perryville. He owned a saw mill located at Brewer, Missouri, where he cut lumber and manufactured railroad ties. He would bring the large logs to East Perry and take the smaller ones to his own mill. He had been in the logging business for twenty years. At the time of the trial claimant was in partnership with Robert Boland. The partners had one employee, Kenny McClure, a school boy. Kenny had no regular job but did help with the loading.

In addition to the truck, claimant owned a "cat" (tractor) with a heavy winch. The equipment was used to drag heavy logs and load them on the trucks. He also owned saws. Claimant's method of doing business was to buy standing timber from farmers and after cutting the trees haul the logs made therefrom either to his sawmill or to East Perry. East Perry was in no way involved in the purchase of the timber. Claimant paid the farmer for the timber he bought. When the logs were brought to East Perry claimant paid the farmer a certain percentage of the money paid him by said company.

On cross-examination claimant testified that while it had been quite a while prior to his injury that he had taken logs to the mill, he could have if he had so desired. He stated he was not put on any schedule by East Perry, but if he did not want to cut logs on a certain day he did not do so. He also stated that he could have sold the logs to any other mill in the area if the logs met the required specifications of the other mill. During the four or five months he cut timber on the Mattingley farm he hauled one to four truck loads of logs each day to East Perry. East Perry did not withhold any amount for income taxes from the amount paid claimant for the logs he sold to the company. He made out his income tax returns at the end of each year showing he was self-employed.

Arthur Lueders, Secretary and Treasurer of East Perry Lumber Company, testified that claimant had never been on the payroll of the company as an employee. He further testified that East Perry had no supervisory control over Mr. Counts while cutting timber.

East Perry Lumber Company is a corporation. It is engaged in the lumber business at Frohna, Missouri. There it manufactures lumber from logs that are brought to its premises. The logs are run through the sawmill and cut into various sizes of

lumber which is then stacked, dried in the kilns, and sold to industrial plants, furniture factories, flooring concerns and box manufacturers. Wood chips are made out of the waste, and along with sawdust are sold in bulk. The company does not have a retail yard.

Some of the logs that are processed into lumber at the Frohna plant are from timber purchased by the company. The trees thus purchased are cut by employees of East Perry and the logs are brought to the sawmill in company trucks operated by its employees. The company has about six million board feet of growing timber under contract with various owners of land in the area. Another source of supply is timber grown on three thousand acres of land owned by the company. None of this timber was cut during the two years prior to the hearing but has been kept in reserve. The company did at times hire persons who were not regular employees to cut trees and process lumber on lands of others where it had purchased standing timber. The persons hired owned their own buzz saws, trucks, and other similar equipment used by the regular employee who did such work. They were carried on the company payroll. The last one so employed was in 1960. Claimant was never hired to do that type of work. The company had about fifty regular employees. About sixty per cent of the logs brought to the Frohna plant are purchased from independent loggers, referred to in the evidence as "suppliers". In 1966 there were about fifty who sold logs to the company. Claimant was a supplier. Mr. Petzoldt, President of East Perry, testified that claimant would bring the large logs to East Perry, and take the small ones to his own sawmill; that at times they would not hear from him for two weeks, three weeks or a month, and thought he might be sawing railroad ties. He also testified that suppliers were under no obligation to bring their logs to the company, and at times they would sell their logs in Cape Girardeau if the price paid there was higher

than at East Perry. He stated that if the price of railroad ties advanced so that claimant would profit more by cutting his logs into ties he would do so. East Perry processed about ten million feet of timber annually.

It was the practice of East Perry to periodically furnish each supplier with a specification sheet setting out the kinds, sizes and grades of logs they were willing to buy, and the price it was willing to pay for each grade. The kinds specified were oak, ash, soft maple, poplar, cherry, hard maple, gum, elm, hackberry, birch, lind, cottonwood, walnut, pecan and hickory. The sizes ranged from fourteen to twenty-four inches in diameter and lengths from six to sixteen feet. It was specified there would be a $10.00 per thousand deduction on all logs which averaged less than 60% twelve to sixteen feet per truck load, and logs under twelve inches in diameter had no value. The prices were specified according to grade. The grades were listed as clear, two defects, sound and in addition as to cottonwood, sound and straight, and knotty as to walnut. Length and diameter were also specified as elements in the determination of grade. A price was established for each grade. There were four grades for oak, ash, soft maple, poplar and cherry. There were two grades for hard maple, gum, elm, hackberry, birch and lind, and three for cottonwood. There were five grades for walnut, and two grades for pecan and hickory. Each type of wood had different prices for the grades specified. It was provided that prices might be changed without further notice. There is no provision binding the company to purchase logs brought to its yard. Claimant was one of the suppliers reguarly given specification sheets. These specification lists were changed from time to time, the changes being in regard to prices and grades. When this occurred suppliers would be sent new specification lists. Generally, if the logs met the specifications the company bought them.

East Perry never entered into any agreements guaranteeing any farmer or landowner who would sell his timber to a supplier who would cut it and haul it to the East Perry mill for sale that he would be paid his money.

Anyone who wanted to sell logs to East Perry brought the logs to the company's mill yard where the company's buyer, also called a "scaler", graded the logs. The logs were first unloaded. This was done by the truck driver unless the logs were too large for him to handle. In the event there was an operator of a fork lift, he would help remove the logs from the truck. After that was accomplished the log buyer would measure and grade the logs and from the information thus obtained determine the price the company would pay. If the supplier was not satisfied with the price determined by the company's buyer, he was at liberty to take his logs elsewhere. If the supplier was satisfied with the price offered he was given a ticket by the buyer showing the grade and the amount offered which he would take to the company office where he was paid the amount shown on the ticket.

If logs brought to the lumber yard did not fit the specifications or were defective, the company would not buy them. If the company buyer could determine this when the logs were on the truck they were not unloaded. If it was determined after the logs were unloaded that the logs were not acceptable, the owner could take them away or if he left them they would be placed on the disposal pile and burned.

As a result of being struck by the falling log Counts suffered a fifty per cent permanent partial disability of the leg at the ankle. There was also a twenty weeks healing period. It was stipulated that the hospital bill was $949.35, and the doctor bill $165.00. There was evidence that the wage rate of the log scaler at the company yard, who also operated a fork lift, was approximately $2.50 an hour.

The evidence does not as a matter of law disclose that Counts was an independent contractor entitled to compensation under § 287.040, supra. An independent contractor entitled to the protection of said act has been defined as one who is engaged by another to do specific work for a specific recompense. The Commission could have reasonably found that claimant was not so employed and that he did not receive any compensation from East Perry for work done on the latter's premises. There was competent and substantial evidence which tended to show that Counts was in business for himself and not in the service of East Perry. It also tended to show that the logs he cut and brought to the company's log yard belonged to him and were sold to the company after they were measured and graded by the log buyer. The finding and award of the Commission is therefore supported by competent and substantial evidence and, in our opinion, not contrary to the overwhelming weight of the evidence. It therefore becomes our duty to affirm the judgment. Any other ruling would violate the rules of appellate review as set forth in the cases heretofore cited.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LYON ANDERSON, Special Commissioner, is adopted as the opinion of this Court. The judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.