Joyce Evans **WALLACE** and Timothy Kent Wallace, a Minor, Claimants-Respondents,

v.

**PORTER DeWITT CONSTRUCTION COM-PANY, Employer-Appellant,**
and
**Liberty Mutual Insurance Company, Insurer-Appellant.**

No. 9117.

Springfield Court of Appeals, Missouri.

Dec. 23, 1971.

Motion for Rehearing or to Transfer to the Supreme Court Denied Jan. 12, 1972.

Application to Transfer Denied March 13, 1972.

Robert G. Burridge, Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for claimants-respondents.

Louis W. Riethmann, Thomas E. Fitzgibbons, St. Louis, for appellants.

TITUS, Presiding Judge.

James Wallace, an employee of Ross Oil Company (Ross), was fatally injured when the tank truck he was driving overturned after striking a gravel pile on Highway 34 in Wayne County. At the time of the casualty, the highway was closed to the public and was in the throes of construction by Porter DeWitt Construction Company (DeWitt) under an agreement with the Missouri State Highway Commission. Ross, a local jobber for Sinclair Refining Company, had contracted with DeWitt to unit fill its equipment with fuel on the job site; Wallace, on behalf of Ross, was in the process of performing this work when the accident occurred.[1] Proceeding under " 'The Workmen's Compensation Law' " (§ 287.-010), decedent's dependents filed a claim for death benefits (§ 287.240) against DeWitt and its insurer asserting that Wallace had been a statutory employee of DeWitt when injured (§ 287.040, subd. 1)[2]; a referee for the Division of Workmen's Compensation so found and entered an award for the dependents. Upon application for review (§ 287.480) and appeal (§ 287.490, subd. 1), the Industrial Commission affirmed the referee's findings (§ 286.090, subd. 1) and the circuit court affirmed the final award of the commission. DeWitt and its insurer have appealed from the adverse judgment of the court nisi. § 287.490, subd. 2.

■ No material quarrel exists concerning the facts bearing upon Wallace's status as a statutory employee vel non, so resolution of that issue becomes a question of law

and the determination thereof by the Industrial Commission is not binding on this court. Lawson v. Lawson, Mo.App., 415 S.W.2d 313, 316(3); Nabors v. United Realty Company, Mo.App., 298 S.W.2d 474, 477(1).

As an oil jobber, Ross sold and delivered petroleum products to "the public," i. e., to farmers, contractors, sawmills, service station operators, and "people that heat their homes with fuel [oil]." Products handled by Ross were stored in its bulk tanks and from there transported to customers in its tank trucks. Some construction customers might have Ross deliver needed fuel into a tank mounted on a "4-wheeler," and these customers would fill their own units from the 4-wheeler; others, such as DeWitt, would contract for a "unit fill," which means that Ross would "take [its] truck down the road and . . . stop at each individual piece of heavy machinery and put gas in the tank." DeWitt had always contracted for fuel on all its jobs on a unit-fill basis and this was its agreement with Ross. Under the unit-fill contract, Ross' sole duty was to see that the machinery was supplied with fuel; Ross did not agree or undertake to perform any other services for DeWitt, such as changing the oil in the units or doing "any mechanical work on them and this sort of thing," or in doing "anything that [DeWitt's] employees would do normally." DeWitt had no control over or interest in the equipment, personnel or method used by Ross to transport the fuel or to unit fill the machinery, and the only requirement as to when this work was to be done was "when the equipment

---

1. Ross, a partnership composed of two brothers, usually had no employees but had hired Wallace to substitute for one of the partners while he was attending a National Guard summer encampment. Ross, an independent contractor of DeWitt [Counts v. East Perry Lumber Company, Mo.App., 462 S.W.2d 141, 145(1)], was a minor employer (§ 287.050, subd. 2), was not engaged in a hazardous occupation (§ 287.070), and, hence, was not subject to the provisions of the Missouri Workmen's Compensation Act. § 287.090,

subd. 1(4). Statutory references herein are to RSMo 1969, V.A.M.S.

2. Sec. 287.040—"1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business."

wasn't running." The evidence indicates that Ross filled the units after DeWitt's employees had quit for the day and were gone from the job site.

Of course, the "equipment wouldn't work without fuel" and operation of the equipment was necessary to execute the work that DeWitt had contracted to perform for the highway commission. The heavy machinery could not be handily removed from the construction site for fueling purposes, so it was more expeditious that fuel be delivered there, just as it was more efficient for the suppliers of pipe, reinforcing steel, cement, rock, lime, straw, seed and fertilizer to deliver their products to the job site. Having an oil jobber unit fill its equipment was DeWitt's "standard method of operation," since "[w]e're not equipped to deliver fuel, we don't have tank wagons, we don't have storage, and we are in the construction business not in the oil business. We could not afford to put in the equipment that Mr. Ross has for instance because we do not have the other customers." DeWitt's president agreed that if the construction company had been unable to contract with some oil jobber to unit fill its equipment on the job site, it "would have to divert some of [its] employees from their other tasks in order to perform this function."

Pursuit of the deceptive and thwarting practice of attempting to determine the existence, or not, of a statutory employer-employee relationship through a factual comparison of cases, has born a farrago of esoteric writings marinated in undisciplined adjectives that do little in assisting one to satisfactory comprehension. Comparing seemingly illiberal decisions that rule the relationship as being nonexistent to facilitate recovery in common law damage suits with cases exerting exuberate liberality to afford success in workmen's compensation claims, suggests the possibility that some results may have been reached through compassion rather than reason,[3] and the confusion reaped from hard matching is neither succored nor extenuated by repeated assurances that no infallible test exists, that it is difficult and undesirable to formulate general applicable guidelines, and that each case must be determined upon its own particular facts. Walton v. United States Steel Corporation, Mo., 362 S.W.2d 617, 622.

▪ It has been observed that the chief purpose of § 287.040, subd. 1 (quoted marginally in note 2), is to govern persons who discharge, in whole or part, their work by subletting or delegating their usual business to another under contract and to thereby effectively prevent them from evading liability under the workmen's compensation law by doing through independent contractors that which they would otherwise do through direct employees. Offutt v. Travelers Insurance Company, Mo.App., 437 S.W.2d 127, 130; Perrin v. American Theatrical Co., 352 Mo. 484, 489, 178 S.W. 2d 332, 334(2). Nevertheless, before one can be legally classified a statutory employee, the evidence must show (1) that the work was being performed under contract, (2) that the injury occurred on or about the premises of the alleged statutory employer, and (3) that the injury happened while the employee was doing work in the usual course of business of the alleged statutory employer, that is, work " 'which is an operation of the usual business which [the statutory employer] there carries on.' " Johnson v. Medlock, Mo.App., 420 S.W.2d 57, 61(6); Shireman v. Rainen Home Furnishers, Inc., Mo.App., 402 S.W.2d 64, 68. The parties do not dispute the existence of the first two elements. Consequently, the lone question for determination is whether Wallace's fatal injuries were in-

---

3. For example: in a common lawsuit for damages an independent contractor was held *not* to be a statutory employee, but engaged in a "specialty job" when while servicing a derrick for a quarry (Cummings v. Union Quarry & Construction Co., 231 Mo.App. 1224, 87 S.W.2d 1039), whereas an independent contractor in a workmen's compensation action who was injured while servicing a similar device (elevator) for a furniture store, was ruled to be a statutory employee and entitled to compensation benefits. Kennedy v. J. D. Carson Co., Mo.App., 149 S.W.2d 424.

curred while he was doing work which was an operation of the usual business which DeWitt conducted on its premises.

"Subcontractor" (Webster's New World Dictionary of the American Language, College ed., p. 1451) is defined as "a person who assumes by secondary contract some of the obligations of an original contractor." Thus the question of whether a prime contractor who subcontracts any part of the *specific* work he has agreed to perform is a statutory employer usually answers itself. The very fact that the subcontract embraces a fraction of the overall contract is proof enough. Ellis v. J. A. Tobin Construction Company, Mo., 455 S.W. 2d 510–511; Viselli v. Missouri Theatre Bldg. Corp., 361 Mo. 280, 285, 234 S.W.2d 563, 566–567(4). Likewise, if the task delegated to the independent contractor is an essential element of the statutory employer's usual business which the latter also executes with his own equipment and direct employees, it is a facile matter to conclude that the independent contractor, or his servant, is a statutory employee under § 287.040, subd. 1. Montgomery v. Mine La Motte Corporation, Mo., 304 S.W.2d 885, 888(1). The onerous judicial chore arises when we leave these obvious areas of statutory employment and pass into the twilight zone of peripheral operations associated with the principal contractor's operation.

Seeking guides in the shadowy area first leads to a negative test supposedly authorized for use in determining statutory employment, i. e., " ' "[i]f the work being done at the time of injury is not an operation of, or in the *usual* course of, the business which the employer *customarily* carries on upon his premises, but is only incidental, ancillary, or auxiliary thereto, then"—the [independent] contractor or his employee is not a statutory employee.' " Dixon v. General Grocery Company, Mo., 293 S.W.2d 415, 418, and cases there cited. However, such a declaration is, at best, feeble guidance. Unfortunately for the seeker, "usual," "customary," "incidental," "ancillary," and "auxiliary" are wanton words; they accommodate "the writer's interpretation on one occasion and solicits the reader's on another" (Liebman v. Colonial Baking Company, Mo.App., 391 S.W.2d 948, 952) and provide no concrete precept for direction.

Another possible test is seen in the cases collected by Bailey v. Morrison-Knudsen Company, Mo., 411 S.W.2d 178 at 180, as holding that if the services contracted for occur infrequently, or involve "isolated occasional specialty work" or work seldom, if ever, engaged in by the alleged statutory employer, then such work may not be classified as the usual and customary business of the employer. Reliance on such a test is short lived when Settle v. Baldwin, 355 Mo. 336, 347–348, 196 S.W.2d 299, 306(9), is encountered, for there an employee of an independent subcontractor was held not to be the statutory employee of a railroad although he regularly and continuously engaged in the commonplace and unspecialized work of icing railroad refrigerator cars so that the railroad could engage in its usual and customary business of accepting perishables for shipment on its line. Leaning on Morehead v. Grigsby, 234 Mo.App. 426, 434, 132 S.W.2d 237, 241, the Supreme Court said in Viselli v. Missouri Theatre Bldg. Corp., supra, 234 S.W.2d at 566–567: "It is immaterial, certainly not determinative, that the employer was engaged in the business for a brief time, only once, or for a considerable length of time." And in determining the closely related question of casual employment,[4] which, too, is dependent upon what "was a usual and necessary part of [the] employer's normal business," the Supreme Court declared in Noland v.

---

4. Although casual employments were deleted as employments not subject to the act by the *Laws of Missouri*, 1965, pp. 398–399, considerations used in casual employment cases are applicable to statutory employment matters because both involve a determination of what work constitutes an operation of the usual and customary business of the alleged employer.

George Tatum Mercantile Company, Mo., 313 S.W.2d 633, 636, that "the most reasonable view seems to us to be that the irregularity of the times at which particular employment might arise and the unforeseeability of when and how often such employment might exist are relatively unimportant considerations *if the employment, however short in duration and however temporary, and however irregular, is usual and necessary to the proper conduct of the employer's business.*"

A third "general rule of thumb" is provided by Arthur Larson, a noted writer on this subject. He says that statutory employment exists in "all situations in which work is accomplished which this employer, or *employers in a similar business,* would ordinarily do through employees." (Our emphasis). But this "rule," which attempts to judge a single employer by what employers in similar businesses may do, was obviously rejected in Viselli v. Missouri Theatre Bldg. Corp., supra, 234 S.W.2d at 566, and degenerates into imperceptibility when Mr. Larson indicates it is conditioned upon whether the *particular* business involved in the controversy, because of "its size and nature," is accustomed to or capable of carrying on the work that it engages the independent contractor to perform. 1A Larson, Workmen's Compensation Law, § 49.12, at pp. 860 and 863; cf. Eckmayer v. Newport, Mo.App., 267 S.W.2d 379, 381. Many opinions using for authority State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, 354 Mo. (banc) 97, 106, 188 S.W. 2d 838, 842, repeat that Missouri's statutory employment section "declares the operation performed by the workmen must be a part of the *usual* business which 'he'—that is, the particular employer—carries on. It is not a question as to what business other employers usually carry on. . . . It seems [that a statutory employment relationship] could not occur if the operation was one which the employer never did do." But anyone hopefully grasping at the last statement for sureness of direction will come a cropper if he overlooks that Viselli v. Missouri Theatre Bldg. Corp., supra, 234

S.W.2d at 566, also says that *Bland* did not "establish as an infallible test of the applicability of the act that the alleged statutory employer must have performed, at some time, the work or operation relied upon as bringing it within the act."

In arriving at a final award in the instant case, the Industrial Commission relied heavily upon its conclusion that if Ross, or some other independent oil jobber, had not fulfilled its contract to unit fill DeWitt's equipment, DeWitt would have been forced to do this work "by direct employees of the construction company." Surely this cannot be a wholly dispositive consideration in any case, for the same conclusion could be attributed to window washing in a grocery company building so that office "work might be better accomplished" (Dixon v. General Grocery Company, supra, 293 S.W.2d 415), or to servicing a quarry derrick (Cummings v. Union Quarry & Construction Co., supra, 87 S.W.2d 1039), or to janitorial services rendered on the premises of a manufacturer of women's clothing (Wooten v. Youthcraft Manufacturing Company, Mo., 312 S.W.2d 1), or to caulking a laundry boiler (State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, supra, 188 S.W.2d 838), yet in none of these instances, and many more, was it considered to be decisive that the work would or could have been performed by direct employees if it had not been done otherwise by an independent contractor. Although it is proper to assume that if Ross failed to meet its commitments or if another oil jobber was not immediately available, DeWitt would have utilized the services of its direct employees to get fuel for its equipment, nevertheless what DeWitt may have been compelled to do differently from its standard mode of operation in an emergency or in desperation, cannot be classified per se as an operation of its *usual* business.

█ It is impossible for one with the limited sagacity of this writer to make a sensible comparison of writings relating to statutory employment by work subject or by matching factual situations. As the ad-

mittedly prolix foregoing narration attests, no purported rule may be selected without discovering that it has been somewhere countermanded by another. What then is there to do? It is suggested that we escape from the umbra cast by insensible cliches, irreconcilable rules, and wanton adjectives, and turn to a faithful application of the statute, as written and intended, by recognizing the real roles and relationship of the parties. To do this we must shun the common pitfall of being blinded by the mere fact that the work involved was performed on the premises of the alleged statutory employer, which, after all, is not the absolute criterion but only one of the three elements necessary to invoke the act. Johnson v. Medlock, supra, 420 S.W.2d at 61(6). In the final analysis, the relationship between Ross and DeWitt was simply that of seller and buyer, with Ross selling and delivering fuel into the tanks of the equipment belonging to DeWitt in the exact fashion that the purchaser of gasoline at a filling station has the fuel he purchases delivered into the tank of his automobile. The work in which Ross was engaged did not enter directly into the commercial function of DeWitt's usual business, but merely afforded facilities and casual convenience for the conduct of the business in which DeWitt was engaged. In other words, Ross' role was to equip DeWitt's business for operation or to facilitate its operation, but Ross was not to work in or participate in the actual operation of the usual business that DeWitt carried on upon its premises. DeWitt was not the statutory employer of Ross or of the employees of Ross. 99 C.J.S. Workmen's Compensation § 109b. (2), at p. 383.

The judgment of the Circuit Court of Wayne County affirming the order of the Industrial Commission is therefore reversed, and the circuit court is directed to set aside its judgment therein and enter a new judgment reversing the order of the Industrial Commission.

STONE and HOGAN, JJ., concur.