**Walter SHIPLEY, Appellant,**

v.

**Raymond GIPSON and Dewayne Gipson, Respondents.**

**No. 56247.**

Missouri Court of Appeals,
Eastern District,
Division Five.

June 30, 1989.

John W. Reid, II, Fredericktown, for appellant.

Clinton B. Roberts, Farmington, for respondents.

CARL R. GAERTNER, Judge.

Walter Shipley appeals from the denial of workers' compensation benefits for injuries incurred on August 28, 1984, at Dewayne Gipson Sawmill in Marquand, Mo., when a log fell from a truck and crushed his left foot. The Labor and Industrial Relations Committee concluded Shipley was not a statutory employee of Gipson Sawmill and not entitled to benefits. We affirm.

Our scope of review is limited by § 287.495. "We are required to review the evidence in the light most favorable to the decision of the Commission and such decision must be upheld if supported by substantial and competent evidence." *Clare v. Wilson Freight Inc.,* 748 S.W.2d 740, 741 (Mo.App.1988). We must review the whole record in the light most favorable to the decision. *Sansone v. Joseph Sansone Construction Co.,* 764 S.W.2d 751, 752 (Mo.App.1989); *Ford v. Bi–State Development Agency,* 677 S.W.2d 899, 901 (Mo. App.1984). If substantial and competent evidence supports the decision we must affirm even if other conflicting evidence exists. *Mueller v. Bay,* 670 S.W.2d 129, 131 (Mo.App.1984).

Although there is considerable conflict, the following evidence is most supportive of the decision of the commission. Walter Shipley filed a claim for workers' compensation naming as his employers Raymond Gipson and Dewayne Gipson. Dewayne operates the Gipson Sawmill. Raymond, who is Dewayne's father, worked with his son by bidding upon uncut timber. His exact legal relationship with Gipson Sawmill is not clear, but need not be resolved in order to dispose of this case. On occasion Gipson Sawmill would purchase uncut timber from land owners and contract with loggers to cut and haul the timber to the mill. On other occasions loggers would purchase the uncut timber from the land owners, cut and haul the timber to various sawmills where it would be purchased by the mill. In either event it was the industry practice for the mill to pay for the timber with two checks, one payable to the land owner and the other payable to the logger.

Gene Robbins and his son-in-law, Rick Roark are loggers. Shipley was employed by them to cut timber on various tracts during the summer of 1984. Some of the timber cut by Shipley was hauled by Robbins and Roark to the Gipson Sawmill, some to other sawmills. Shipley was paid $6.50 per thousand board foot by Robbins and Roark.

Leonard Buckner owned a tract of uncut timber. He accepted a bid on the timber from Roark whereby he and Roark would split the proceeds of the sale of his timber 50–50. Roark was to arrange for the cutting of the timber and hauling it to different sawmills depending upon which mill would pay the better price for different grade logs. Buckner received three different checks from three different mills, one of which was the Gipson Sawmill.

On August 28, 1984 Shipley cut timber on the Buckner tract. Robbins hauled the logs to Gipson Sawmill. Shipley rode on the truck with Robbins in order get back to where he had left his car. Shipley was injured while the logs were being unloaded.

He admitted that the unloading of logs was not a part of the job that he was paid for.

■ The Labor and Industrial Relations Commission rejected Shipley's contention that he was entitled to benefits as a statutory employee of the Gipson's under § 287.040.1 RSMo.1986 which provides as follows:

> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

The purpose of this statute is to prevent an employer from evading liability under the act by hiring independent contractors to perform the usual work which would otherwise be performed by his own employees. *Rouge v. St. Charles Speedway*, 733 S.W.2d 854, 855 (Mo.App.1987); *Saale v. Alton Brick Co.*, 508 S.W.2d 243, 247 (Mo. App.1974). Consequently, not every type of contract will suffice to satisfy that element of § 287.040.1. On the contrary, only a contract which delegates to another the performance of the usual operations of the employer's business comes within the meaning of the statute. *Ferguson v. Air-Hydraulics Co.*, 492 S.W.2d 130, 136 (Mo. App.1973). Thus a contract for the sale and purchase of a product even though it includes the delivery and unloading of the product upon the premises of the purchaser, does not render the seller's delivery man a statutory employee of the purchaser.

Such a conclusion was reached in *Wallace v. Porter DeWitt Construction Co.*, 476 S.W.2d 129 (Mo.App.1971) upon facts much more conducive to application of § 287.040.1 than those in the instant case. Wallace was an employee of an oil company which sold fuel to a construction company. The agreement required the seller to deliver the fuel to the construction site and to put gas into the tank of every piece of heavy machinery on the site. The construction company acknowledged this function would have been performed by its own employees if it had been unable to contract with an oil jobber to fill its equipment on the job site. Wallace was injured while performing this work. In an eloquently drafted opinion, the late Judge Rex B. Titus set forth the traditional three-pronged test for invocation of the Statutory Employee Doctrine: 1) work performed under contract, 2) that the injury occurred on the premises of the alleged statutory employer and, 3) performance of work which is an operation of the usual business which the statutory employer there carries on. *Id.* at 131. Reviewing a series of cases in which this test had been applied literally, Judge Titus commented:

> Pursuit of the deceptive and thwarting practice of attempting to determine the existence, or not, of a statutory employer-employee relationship through a factual comparison of cases, has born a farrago of esoteric writings marinated in undisciplined adjectives that do little in assisting one to satisfactory comprehension. Comparing seemingly illiberal decisions that rule the relationship as being nonexistent to facilitate recovery in common law damage suits with cases exerting exuberant liberality to afford success in workmen's compensation claims, suggests the possibility that some results may have been reached through compassion rather than reason, and the confusion reaped from hard matching is neither succored nor extenuated by repeated assurances that no infallible test exists, that it is difficult and undesirable to formulate general applicable guidelines, and that each case must be determined upon its own particular facts. *Id.*

Judge Titus then concluded that "faithful application of the statute, as written and intended, [requires] recognizing the real roles and relationship of the parties." *Id.* at 134. Because the contractual relationship was "simply that of buyer and seller" and because the work performed "merely afforded facilities and casual convenience" for the conducting of the usual business, Wallace was found not to be a statutory

employee. Similar reasoning was adopted by the court in *Ferguson v. Air–Hydraulics Co.*, 492 S.W.2d at 130. Ferguson was employed by a truck company which delivered steel to the defendant. The union contract required Ferguson to assist in unloading the steel. In holding Ferguson was not a statutory employee of the steel purchaser, the court approved the *Wallace* concept that a buyer-seller relationship is not the type of contract contemplated by § 287.040.1. *Id.* at 136. A contract within the meaning of the statute is one which delegates the usual operations of the business of the statutory employer. Performance of work which merely carries out the duties assigned by the employee's direct employer, even though it incidentally benefits the statutory employer, is not work performed pursuant to a contract for the delegation of the latter's usual business operations to an independent contractor. *Id.* at 137.

The case most factually analogous to the instant case is *Counts v. East Perry Lumber Co.*, 462 S.W.2d 141 (Mo.App.1970). Counts purchased timber from various land owners which he cut and either used in his own sawmill business or sold to the East Perry Lumber Co. He was injured while unloading logs which he had cut and brought to East Perry for sale. In denying him benefits pursuant to § 287.040.1 the court stated "[a]n independent contractor entitled to the protection of said act has been defined as one who is engaged by another to do specific work for a specific recompense". *Id.* at 145. The contract between Counts and East Perry was a simple purchase and sale agreement, not one calling for the performance of work although unloading may have been incidental to the transaction.

Shipley seeks to avoid the impact of these decisions by arguing the more credible evidence shows the Buckner timber was in fact purchased by the Gipson Sawmill which hired Robbins and Roark to cut, deliver, and unload the logs. There is evidence that such an arrangement had existed with regard to other tracts of timber and evidence which might tend to support

such a conclusion regarding the Buckner tract. The evidence on this latter point is conflicting and the Commission chose to believe the testimony that Robbins and Roark purchased the timber from Buckner for resale to Gipson Sawmill. As that conclusion has substantial evidentiary support, we are not free to substitute our judgment for that of the Commission concerning the credibility of the witnesses and the resolution of conflicting testimony. On the contrary, we are constrained to disregard evidence which might support findings different from those found by the Commission. *Nelson v. Consolidated Housing Development and Management Co., Inc.*, 750 S.W.2d 144, 148 (Mo.App.1988).

Accordingly, the award of the Labor and Industrial Relations Commission is affirmed.

PUDLOWSKI, C.J., and SIMEONE, Senior Judge, concur.