Grover C. STOTTLEMYRE, Plaintiff-Respondent,

v.

MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Defendant-Appellant.

No. 23497.

Kansas City Court of Appeals, Missouri.

June 4, 1962.

Hilary A. Bush, Paul E. Vardeman, Jr., Byron Kent Snapp, Johnson, Lucas, Bush & Vardeman, Kansas City, for appellant.

Charles F. Lamkin, Jr., John I. Moran, Kuraner, Freeman, Kuraner, Oberlander & Lamkin, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff sued defendant for damages in the sum of $15,000. for personal injuries sustained by him when a tractor-trailer, being operated by him, was struck by a switch engine of defendant. Trial to a jury resulted in a verdict and judgment for plaintiff in the sum of $4,000. Defendant appeals.

Plaintiff was proceeding south along Mulberry Street, in Kansas City, Missouri, near where it intersects with St. Louis Street, which runs east-west. Defendant's northeast bound train struck the truck at this intersection. Plaintiff's case was pleaded and submitted on humanitarian and primary negligence. Defendant contends that no case was made on either theory because there was no evidence tending to prove that the train could have been stopped or slackened short of a collision, and because plaintiff was guilty of contributory negligence as a matter of law. Since no issue is made as to the amount of the verdict, it is unnecessary to set out the evidence on the extent of injuries.

The evidence was that Mulberry Street runs north and south and the railroad tracks run northeast and southwest; that Mulberry is thirty nine and one half feet wide; that there are four sets of tracks and the train was on the southernmost set; that it was 49 feet from the north rail of the first track to the south rail of the last track; that there is a railroad crossing sign located north of the tracks; that it is not an electrically operated sign but an ordinary crossing sign; that it is 448 feet to the first street west of Mulberry, which is Hickory; that there is a clear and unobstructed view to the west from Mulberry to a point beyond Hickory; that there is a flagman's shanty located on Mulberry, north of the tracks; that, after passing the shanty, a south bound motorist had an unobstructed view, to the southwest, along the tracks; and that St. Louis Street, running east-west, intersects Mulberry a very few feet north of the railroad crossing so that the crossing virtually intersects both streets; that the front of the engine struck the rear dual wheels of the trailer, seven feet from the rear of the trailer; that the over-all length of the tractor-trailer was 45 feet; that the length of the engine was 40 feet; and that the engine was pulling a caboose in a switching operation.

Police officer Scoby stated that he arrived at the scene shortly after the occurrence; that plaintiff stated that he did not realize danger until the impact oc-

curred; that he was traveling at a speed of 10 to 15 miles per hour; and that he saw the engine when it was 40 to 50 feet southwest of him.

Mr. Hall, a trailer repairman whose shop was located near the crossing, stated that the crossing was rough and pitted; that he was in his shop, but had not actually begun work, when he heard the crash of the collision, shortly after 8:00 a. m.; that he heard no bell or whistle prior to the collision although he could have done so.

Plaintiff stated that he had operated tractor-trailer vehicles for many years; that he had been operating over this crossing for some 12 years, and was familiar with it; that, always before, defendant had maintained a watchman at the shanty who, upon the approach of a train, would warn traffic; that the watchman was not in sight on this occasion; that, after the front of his truck cleared the shanty, he could see down the tracks to the southwest a block or more; that he was proceeding at a speed of 10–12 or 15 miles per hour, having slowed because the crossing was rough; that he slowed down to possibly 10 miles for the crossing; that he looked both ways and saw nothing; that he proceeded to about the middle of the crossing; that he, again, looked both ways and saw no danger; that he proceeded until the front of the tractor was about at the north rail of the south set of tracks when he saw the engine; that it was from 40 to 50 feet from him; that he speeded up, possibly 5 to 6 miles per hour, to get off of the track; that the engine struck the rear dual wheels, causing damage to the trailer and injuries to plaintiff; that he was traveling in the west lane of Mulberry, about a foot from the center line; that the front of the engine, when it stopped, was about 10 feet out in the street; that the engine, when he first saw it, was traveling at about 10 miles per hour, the same speed as that of the motor vehicle; that plaintiff traveled about 38 feet from the time he first saw the engine until the collision occurred; that, had he seen the engine when he *first*

looked, he could have stopped before reaching the point of impact; that the crossing was rough and pitted (pictures in evidence disclose this condition); that he heard no bell or whistle at any time; that, as he got on the south track, he saw the engine coming slow—"I kind of had my eyes— a car was pulling out of a parking spot— I guess he had been in a cafe—and I was watching the car, to see if he went on, and the train, I probably looked at that again a second time—I can't remember. I saw he was making no attempt to stop— didn't have any bells or anything like that. He just kept on coming I kind of stepped on the gas trying to get out of the way, and he caught the rear fender of my trailer, * * *." He further stated that he did not keep watching the train as it approached; that "well, no, I turned around and looked at the car again. I thought he would stop. He made no attempt to stop that I could see"; that, when he looked the second time, about halfway across, if the train had been there, moving slow or stopping, it would be like a building standing there, "I see no need of danger, it was just there".

Plaintiff pleaded and proved the ordinances of Kansas City, Missouri, providing that defendant should maintain a watchman at this crossing who should warn approaching traffic of danger from trains, or, under certain conditions, in lieu of a crossing watchman, a member of the train crew should warn traffic, making it a misdemeanor to move a train over this crossing in the absence of a watchman or a member of the train crew acting as a flagman. The evidence showed that there was no watchman present and that no member of the train crew, or other person, acted as a flagman on this occasion.

Mr. Conger, fireman on defendant's engine, testified to the following effect: that the switch engine was 40 feet long and was pulling a caboose; that he occupied a seat on the left-hand side of the cab and could see the crossing as the engine approached it; that the speed of the engine

was 7 miles per hour; that the bell was ringing; that, when he first saw the tractor-trailer the front of the engine was 20 feet west of the west curb line of Mulberry Street; that he realized that it was not going to stop; that he immediately called to the engineer, "Stop!"; that the engineer put the brake into emergency and stopped before the collision; that plaintiff cut the tractor to the right and threw the trailer into the drawbar of the engine; that, otherwise, there would not have been a collision; that the front of the engine was 10 or 12 feet into the intersection when it stopped. He admitted that he had testified by deposition that the engine was 20 feet into the intersection when it stopped and that it could have been stopped, at the speed it was traveling, under the conditions existing, within 15 feet after he called "Stop".

Mr. Davis, defendant's engineer, said that the bell was ringing when the accident occurred; that he could not see the crossing as he approached because of the engine; that, as the engine approached the crossing its speed was from 6 to 7 miles per hour; that Mr. Conger called, "Stop!" and he set the brakes for an emergency stop; that the engine was stopped within about 29 feet; that the collision occurred after the engine had stopped; that the engine was from 9 to 10 feet in the intersection when it stopped; that he knew that the crossing is a busy one. He admitted that he stated in his deposition that he was traveling at 6 or 7 miles per hour because he was approaching Mulberry Street and there was no flagman there at the time, no protection, and it was a busy street; that there was a switch crew of three men in the caboose; that he knew there was no watchman on duty then but that after 8:30 a. m. there would be two watchmen; that the accident occurred at 8:10 a. m. and both watchmen were actually there, that they came early, but that neither flagged the crossing; that he did not sound the horn before the accident; that the engine was 20 feet from the crossing when the signal to stop was

given; that, at 5 miles per hour, he could stop within 15 feet after the air is applied. He admitted that he said in his deposition: "well, by the time he hollered and I made the stop it was fifteen feet". He stated that, after the engine stopped, the tractor went on across the track, making a right angle turn; that there was a car going north and the tractor pulled to the right to get out of its way. He stated that the front of the engine was 9 or 10 feet into Mulberry when it stopped but admitted that, in his deposition, he stated that it was out from 15 to 20 feet, and stated in evidence that the sidewalk was 10 feet wide and the engine out 10 feet further.

■ From the testimony of defendant's fireman and engineer the jury could have found that, at the speed at which the engine was traveling at the time, it could have been brought to a stop within 15 feet from the time the signal to stop was given. This testimony was by deposition but constitutes substantial proof of the fact. Blanks v. St. Louis Public Service Company (Mo. App.), 342 S.W.2d 272, 277; Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400, 410–411. The jury could also have found that the front of the engine, at that time, was 20 feet west of the west curb line of Mulberry; that the collision occurred ten feet east of the west curb line; that the collision occurred some 31 feet east of the point where the front of the engine was at the time when defendant's fireman realized that the truck would not stop and shouted to the engineer "Stop!". Larkin v. Wells (Mo.App.), 278 S.W. 1087, 1088–1089. Plaintiff stated that, as he came onto the north rail of the south set of tracks, the engine was from 40 to 50 feet from him, and the jury could have found that it was at this point that the fireman saw plaintiff and realized that he was not going to stop. If the jury believed the testimony of plaintiff, or of the fireman and engineer, it could have found that defendant could have stopped its engine short of the point of impact. Therefore, plain-

tiff made a submissible case on the humanitarian theory of negligence.

 Defendant says that there is a variance between plaintiff's testimony and that of defendant's witnesses as to speeds and distances. Plaintiff is not conclusively bound by his testimony as to those matters. Smith v. Producers Cold Storage Company, Mo.App., 128 S.W.2d 299, 303.

Defendant does not deny its negligence but does contend that plaintiff cannot recover under any theory of primary negligence because he was guilty of contributory negligence as a matter of law.

When plaintiff approached the crossing there was no watchman to warn of approaching trains, although always before, when plaintiff used the crossing, there had been a flagman. However, he looked before entering the crossing and saw no danger. He slowed down his speed and changed to a lower gear because the crossing was rough and pitted. When he reached the middle of the crossing he again looked in both directions. He stated that he was watching a man who came out of a cafe and got in a car, watching the car which was pulling out of a parking space, to see if it went on. Defendant's engineer stated that, at about the time the collision occurred (he said that it was before the collision), a car came toward the north, meeting plaintiff, and that plaintiff's tractor, at that time, came out on the south side of the track and turned to the right, to get out of the way of the approaching car. The jury could have believed that plaintiff's mind and attention was momentarily diverted from the danger from a train by imminent danger of collision with the automobile; that, because his attention was momentarily distracted by the car, he failed to see the train when he last looked, or before going on the track.

If the train was moving at that time, it was moving very slowly and, according to plaintiff's testimony and that of Mr. Hall, no bell was being sounded; and

the engineer said he did not sound the air horn. Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with due care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger. 65 C.J.S. Negligence § 120, pages 726–727. Goldman v. City of Columbia, Mo.App., 211 S.W.2d 541, 543. Under the evidence in this case the question of contributory negligence was for the jury, not the court.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. All concur.