Mike MUSIELAK, Plaintiff-Appellant,

v.

INTERNATIONAL SHOE COMPANY, a Corporation, Defendant-Respondent.

No. 31716.

St. Louis Court of Appeals.

Missouri.

Jan. 19, 1965.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 12, 1965.
As Modified Feb. 12, 1965.

Motion for Rehearing or for Transfer to Supreme Court on Modified Opinion of Feb. 12, 1965 Denied March 18, 1965.

John J. Relles, Clayton, William L. Mason, Jr., Galena, for plaintiff-appellant.

Garstang, Mueller, Riethmann & Soebbing, Louis W. Riethmann, St. Louis, for defendant-respondent.

BRADY, Commissioner.

The appellant, hereinafter referred to as the plaintiff, brought an action for damages against the respondent, hereinafter referred to as the defendant, for personal injuries. Upon jury trial the plaintiff received a verdict in the amount of $7,500.00. The trial court thereafter sustained the defendant's motion for judgment in accordance with its motion for directed verdict and entered judgment for the defendant and, providing for the event that action should be reversed on appeal, also sustained the defendant's alternative motion for a new trial. The basis upon which the trial court took each of these actions will appear later herein. The evidence will be stated in the light most favorable to the plaintiff.

The plaintiff did janitor work for the Aetna Window Cleaning Company which was engaged in cleaning windows and other facilities in residences and factories including certain factories operated by the defendant. Such work was done for the defendant under a contract with Aetna whereby Aetna's men performed any general janitorial services they were directed by the defendant's men to perform. Defendant also maintained a janitorial department, and the employees often worked along

with the plaintiff and other Aetna men. Aetna was owned and operated by Mr. Kronnmer to whom the plaintiff reported each morning to be told exactly where he was supposed to go for work. On the days when he was to work at the defendant's factories and would be there for three or four days, he would go directly from his home to the factory without stopping off at Aetna. During the week before Christmas of 1954 the plaintiff was directed by Kronnmer to go to defendant's building at 1504 or 1509 Washington Avenue in the City of St. Louis where defendant had an office building and warehouse. There he reported to a Mr. Mayes and to a Mr. Art Kuhlengel. The latter was a janitorial foreman for defendant and as a rule took the plaintiff to the particular place in the building where plaintiff was to work and directed him as to what was to be done. On December 23, 1954, Kuhlengel told plaintiff that he was to come in the next morning to "* * * wash—scrub a floor in the cafeteria." The purpose of this work was to remove old spots of paint from the cafeteria floor. A new tile floor, a part of the remodeling of the entire cafeteria, was to be laid. Kuhlengel told the plaintiff to bring the oldest shoes he had "* * * because we would be wading around in a lot of water the next morning." He gave plaintiff no further information as to what kind of material they would be working with, but the plaintiff knew that some kind of solution other than water was to be used. On Saturday, December 24, in the company of another Aetna employee who was to work with him, the plaintiff came to the International Shoe building and went to the engine room where he found still another Aetna employee. These men went to the cafeteria where they first moved the furniture over to one side of the room. Kuhlengel was present and also helped with the furniture moving. When this was finished, Kuhlengel mixed two batches of a solution at the cafeteria in a ten-gallon can. The evidence is that this solution consisted of a powder which was taken from an un-marked can which had been stored in the defendant's engine room. This powder was mixed with water to form the solution. The only direct evidence in the trial as to who supplied this powder, later identified as caustic soda and lye, comes from the plaintiff. On direct examination he testified that Aetna furnished the materials that he worked with or used at defendant's plant whenever he was called to work there and that this included things like "* * * soap and mops and buckets, etc." On another occasion in his testimony plaintiff stated that the solution was "* * * brought in from Aetna Window Cleaning" and that he thought that Kronnmer had sent this material over to defendant's factory. On cross-examination the plaintiff was asked this question "* * * Aetna apparently had sent that over to International Shoe Company, is that correct?" Plaintiff answered, "Well, they probably had, yes, sir."

The plaintiff had never worked with such a solution before and was wearing canvas topped crepe soled shoes. The defendant furnished one pair of boots and these were used by one of plaintiff's co-workers. The solution was put on the floor and mopped. At about 11 o'clock in the morning the plaintiff's feet started to burn and sting. He left the cafeteria room and Kuhlengel was notified. When Kuhlengel appeared, the plaintiff asked him what was in the solution and was given the reply "* * * caustic soda and lye." At the latter's instructions the plaintiff removed his shoes and socks and when he did so, the skin on his right foot came off as the sock was removed. Kuhlengel suggested that the plaintiff soak his feet in clear water, but the plaintiff was in such pain that he could not do so. However, he did attempt to wash his feet with a rag. The plaintiff was directed by Kuhlengel to report back to Aetna and experienced great difficulty walking back to Aetna, a distance of some four blocks from the defendant's plant. When he arrived at Aetna and exhibited his feet, the plaintiff was taken to a Dr. Costa. On

the following Monday or Tuesday plaintiff again reported for work at the engine room at defendant's plant, but after a few hours' work he was again taken to see Dr. Costa. It does not clearly appear whether Dr. Costa was defendant's regular doctor, if he occupied that position for Aetna, or if he was unconnected with either. He was not plaintiff's physician. Dr. Costa arranged for plaintiff to be admitted to the hospital where he remained for twenty-three days undergoing treatment for his feet. After being released from the hospital, the plaintiff saw Dr. Costa some twenty times.

With reference to whether the plaintiff was warned, the defendant offered the testimony of its employee Kuhlengel and of Robinson, another Aetna employee. Both made positive statements that plaintiff was warned. The plaintiff's evidence as to this issue comes from his own testimony. On direct examination the plaintiff testified that Kuhlengel did not tell the plaintiff or the other Aetna employees what he was mixing nor did he tell them it would burn and not to get it on their skin nor that it was a caustic solution. However, on cross-examination the plaintiff stated that he could not remember whether Kuhlengel had warned him that it was a caustic solution or one likely to burn him.

The defendant was a major employer as that term is used in the Missouri Workmen's Compensation Act and was operating under and subject to the terms of said act on the date of the occurrence in evidence.

Defendant's offered Instruction No. A consists of two paragraphs, the first of which is an abstract statement of Section 287.040(1), RSMo 1959, V.A.M.S. In the second paragraph it was hypothesized the defendant contracted with Aetna for the latter to do work on the defendant's premises " * * * which was an operation of the usual business carried on there by defendant. International Shoe Company"; that Aetna was an independent contractor in doing this work; that plaintiff was injured by reason of an accident " * * * arising out of and in the course of his employment * * * " on defendant's premises while " * * * mopping and cleaning a floor, if you so find"; and that " * * * the mopping and cleaning of said floor was an operation of and in the usual course of the business of the International Shoe Company carried on on its premises, if you so find." Based upon these findings the instruction informed the jury that the plaintiff could not recover and their verdict should be for the defendant.

Civil Rule 83.05(a), V.A.M.R. requires the defendant to set forth either in full or the questioned portion of plaintiff's verdict-directing instruction which defendant contends was erroneously given. This the defendant has failed to do. However, reference to the transcript discloses that plaintiff's verdict-directing Instruction No. 1 was submitted upon the theory of defendant's failure to warn the plaintiff. In those portions pertinent to the issues raised on this appeal it was hypothesized that defendant through its agents and servants provided plaintiff " * * * with a solution containing caustic soda and lye, if so, to use in scrubbing said floors * * * "; that defendant " * * * knew, or in the exercise of ordinary care could have known of the said hazardous and dangerous nature * * * " of the solution; that defendant " * * * then and there failed to exercise ordinary care to warn plaintiff of the said hazardous and dangerous nature, if any, of the said solution * * * "; that defendant was thereby negligent; that as a direct result of such negligence plaintiff had no knowledge of the dangerous and hazardous nature of said solution and therefore undertook to use it and walk in it; and that the plaintiff thereby sustained injuries. The decision reached herein renders unnecessary any detailed explanation of Instruction No. 2 which was based upon the theory that the defendant owed plaintiff a duty to supply him with heavy boots or shoes.

■■ The Workmen's Compensation Act of this state is not cumulative or supplemental but is wholly substitutional and if applicable, constitutes the plaintiff's exclusive remedy. Cleveland v. Laclede-Christy Clay Products Co., Mo.App., 113 S.W.2d 1065; Cummings v. Union Quarry & Construction Co., 231 Mo.App. 1224, 87 S.W.2d 1039. The defense of the applicability of the Workmen's Compensation Act was an affirmative one and the burden of the proof as to such issue is upon the one asserting it. Mo.Digest, Workmen's Compensation, ☞1340.

■ The trial court based its action on defendant's motion on two grounds: first, that plaintiff was a loaned or borrowed employee; and second, that plaintiff was a statutory employee. The defendant seeks to sustain trial court's ruling that plaintiff was a loaned or borrowed employee by citing Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628. In Ellegood this court, citing Pruitt v. Harker, 328 Mo. 1200, 43 S.W.2d 769, held that when the plaintiff in that case responded to the orders and direction of his regular employer, Curtis, to perform work for Brashear, he became the servant, pro hac vice, of Brashear while engaged in said work, if the facts demonstrated: " * * * (a) consent on the part of the employee to work for the special employer; (b) actual entry by the employee upon the work of and for the special master pursuant to an express or implied contract so to do; (c) power of the special employee to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue." (162 S.W.2d l.c. 633.) The defendant insists that Ellegood compels a decision in its favor on the basis of the application of the borrowed servant doctrine. We cannot agree. The distinction between the line of cases represented by Ellegood, supra, and the instant case is to be found in the nature of the contract involved in each case. In Ellegood, the plaintiff's regular employer, Curtis, entered into an agreement with the alleged special employer as stated in the opinion " * * * whereby the services of plaintiff and the truck were [to be] furnished * * * " to the special employer for a consideration. In the instant case the plaintiff's regular employer, Aetna, did not contract with the company for the services of the plaintiff. The contract was for Aetna's employees to do janitorial work and which of its employees did the work was completely immaterial. In Ellegood, supra, the plaintiff was to do a specific job; i. e., drive a truck to Indiana, while in the instant case the plaintiff was one of several Aetna employees who were to do whatever janitorial work needed to be done pursuant to the contract between Aetna and the company. In its essence the subject of the contract in Ellegood was for a specified man for a specified job while the subject of the contract in the instant case was janitorial work. Thus, in the instant case the plaintiff was injured while upon defendant's premises doing janitorial work as called for by the contract between Aetna and defendant. Admittedly Aetna's employees were to be directed in the doing of this work by the defendant's employees, but when they did this work, they were engaged upon Aetna's work; the janitorial services called for by Aetna's contract with defendant. Thus, the plaintiff never engaged upon any " * * * work of and for the special master pursuant to an express or implied contract so to do." He was engaged upon the work of his regular employer Aetna and as such does not come within the purview of the borrowed servant doctrine.

■ We pass next to defendant's contention the plaintiff was a statutory employee. Section 287.040(1), supra, reads as follows: "Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is

in the usual course of his business." In the final analysis whether or not the plaintiff is to be considered a statutory employee under the provisions of this section presents two questions: first, what was the scope of the usual business of the defendant carried on at the Washington Avenue plant; secondly, was the work being performed by the plaintiff at the time of his injury within the scope of that work. See Kirch v. Armco Steel Corp., 8 Cir., 274 F.2d 120. The rule is that no test can be laid down to determine what work is within the scope of the operation of the usual business which is carried on at a particular place but that each case must be determined upon its own facts. Viselli v. Missouri Theatre Bldg. Corp., Mo., 234 S.W.2d 563. The defendant admitted that it carried on a shoe manufacturing business at the Washington Avenue address. In Wooten v. Youthcraft Mfg. Co., Mo., 312 S.W.2d 1 at [1], page 3, it was held that " * * * courts may take judicial notice of the fact that janitorial work has become a business in itself * * *." There is no evidence that the defendant was in the janitorial business, an activity which the Supreme Court has held we may judicially notice constitutes a separate business, and an activity which normally encompasses the work the plaintiff was doing when he was injured. However, we are not to be understood as placing our decision on the grounds that janitorial services constitute a separate act of business in which the defendant under the pleadings admittedly did not engage. The question is whether the defendant bore its burden to prove the plaintiff was injured while doing work which was within the scope of the usual business defendant carried on at the Washington Avenue plant. The evidence is that at the time the plaintiff was engaged in mopping the floor of this cafeteria he was doing so with an admittedly out of the ordinary floor cleaning or mopping solution, a solution that was caustic and dangerous. Moreover, the uncontradicted evidence is that at the time plaintiff was injured he was engaged in mopping the floor with this caustic mixture for the purpose of removing

paint off the floor so that a new tile floor could be laid as a part of the remodeling of the entire cafeteria. There is no evidence that defendant usually or customarily used such a solution to clean its floors or that it usually or customarily did the work this floor cleaning was an integral part of; i. e., laying a new floor and remodeling the cafeteria. To sustain the trial court's ruling on defendant's motion would require us to rule as a matter of law that it was in the usual course of defendant's business to use a caustic chemical mixture which could cause injury to those using it to remove the paint off a floor of a cafeteria for the purpose of preparing that floor for the laying of tile which in turn was a part of a complete remodeling of the cafeteria. In the instant case the transcript does not disclose a set of facts which illustrates the work plaintiff was doing was something which was customarily carried on by defendant but in fact shows this work to have been incidental, auxiliary and ancillary to defendant's usual business. Wooten v. Youthcraft Mfg. Co., supra; Eckmayer v. Newport, Mo.App., 267 S.W.2d 379. We hold the defendant did not sustain his burden of proving the work in which the plaintiff was engaged when he was injured was such that he must be relegated to recovery, if at all, under the provisions of the Workmen's Compensation Act of this state.

As stated earlier herein, defendant's offered Instruction No. A consisted of an abstract statement of § 287.040(1), supra, coupled with a paragraph which contained an hypothesization requiring the jury to find, among other things, that the work plaintiff was doing when he was injured was in the usual course of defendant's business. We can easily conceive of testimony which would allow such a submission and do not rule that a factual situation which would allow the jury to find the work plaintiff was doing to have been in the usual course of defendant's business could not exist. We do hold that this transcript does not disclose facts upon which the jury could reasonably base such a finding. Accord-

ingly, the trial court acted correctly in the first instance when it refused to give this instruction.

■ Having sustained the plaintiff on the two points above ruled, we would normally proceed to remand this cause to the trial court with directions to reinstate the jury verdict. However, the defendant is not bound by the specific ground the trial court named when it sustained the motion for new trial but may also urge in support of that ruling any other points properly preserved in the motion for new trial and if they are valid, the order granting a new trial is to be affirmed. Williams v. Kaestner, Mo.App., 332 S.W.2d 21. Cognizant of that fact the defendant in its brief advances other grounds for sustaining the trial court's ruling. Defendant contends it was entitled to a directed verdict because the evidence shows the caustic chemicals to have been the property of Aetna and therefore there was no duty placed upon the defendant to warn the plaintiff. In the alternative defendant contends the trial court was correct in granting a new trial for the reason that the evidence was insufficient to justify the submission of plaintiff's case upon verdict-directing instructions.

■ We cannot agree that the fact that Aetna supplied the chemical used to make this caustic solution relieves defendant of any duties he might have to the plaintiff so as to entitle the defendant to a directed verdict. This is not a case where the owner failed to exercise any control over the dangerous instrumentality. In the instant case the inert chemical did belong to Aetna, but the defendant's agent Kuhlengel activated it by mixing it with water to form the solution which injured the plaintiff. Moreover, Kuhlengel directed that this solution be used by the plaintiff. Under these circumstances the defendant cannot now maintain that, as a matter of law, he was relieved of any liability to plaintiff because the chemical its agent Kuhlengel used belonged to Aetna.

■ The defendant's alternative contention has merit. Instruction No. 1 hypothesized that the defendant " * * * then and there failed to exercise ordinary care to warn plaintiff of the said hazardous and dangerous nature, if any, of the said solution * * *." This was an essential element of the plaintiff's case. Marsanick v. Luechtefeld, Mo.App., 157 S.W.2d 537, 1. c. 543. There was no evidence offered by the plaintiff to support the submission of this issue to the jury. The defendant's evidence was exactly to the contrary and there are no permissible inferences to be drawn therefrom which would justify submission of this issue. On direct examination the plaintiff testified that he was not warned. He was confronted with his statements made upon deposition wherein he had testified that he was warned. Faced with this apparent contradiction the appellant then admitted he did not know whether he was warned or not, the occurrence having taken place so long ago that he could not remember. It is elementary that such testimony does not prove or disprove whether plaintiff was warned. Under such circumstances Instruction No. 1 was erroneously given.

■ As stated peviously, there was a general verdict returned in this case. Under such circumstances it is impossible to know whether the jury found in favor of the plaintiff upon the submission made in Instruction No. 1 or whether it made such finding upon the submission made in Instruction No. 2. Since we have found that Instruction No. 1 was erroneously given, it follows that the trial court correctly awarded the defendant a new trial because it may have been that the jury founded their verdict upon that instruction. The judgment in this case awarding a new trial to the defendant should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

RUDDY, P. J., WOLFE, J., and SAMUEL E. SEMPLE, Special Judge, concur.

ANDERSON, J., not participating.