Robert SIPPEL, Plaintiff-Appellant,

v.

CUSTOM CRAFT TILE, INC., a Corporation,
Defendant-Respondent.

No. 34179.

Missouri Court of Appeals,
St. Louis District.

April 25, 1972.

Schaeffer & Schaeffer, Clayton, for plaintiff-appellant.

Robert H. Burns, Clayton, for defendant-respondent.

DOERNER, Commissioner.

Trial of this personal injury action culminated in a verdict and judgment for plaintiff for $25,000. The trial court overruled defendant's motion for judgment in accordance with its motion for a directed verdict but sustained its motion for a new trial, and plaintiff appealed.

Defendant was engaged in contracting to furnish and install carpeting and tile in apartments and other buildings, primarily with general contractors and builders. Sometime prior to May 9, 1968, the defendant sent an order to Lowry Distributors for the purchase of rolls of carpeting. Lowry, the sales representative of various mills, ordered or purchased the carpeting from a mill named Condeck Carpets, of Cartersville, Georgia, to be shipped to plaintiff. Condeck apparently shipped the rolls of carpeting by Roadway Express Company, a common carrier.

On and prior to May 9, 1968, plaintiff was a truck driver employed by D & C Truck Leasing Company, and he and D & C's tractor had been leased by D & C to Roadway in St. Louis. On that day, pursuant to the directions of Roadway's dispatcher, plaintiff attached the tractor to Roadway's trailer containing freight for one other consignee as well as the rolls of carpeting consigned to Custom. Plaintiff arrived at defendant's place of business, parked his equipment, and advised a lady in defendant's establishment that he had the carpeting for them. The lady replied that he would have to wait because their men were on the street. Plaintiff waited outside, in or near his truck, and after a while one of defendant's employees, named Glen Vollmar, appeared with one of defendant's trucks. Vollmar told plaintiff that plaintiff would have to move plaintiff's truck so that it was parallel with the building, and plaintiff did so. Vollmar said he would unload the truck by wrapping one end of a chain around a roll of carpeting, hooking the other end on to defendant's truck, and backing the truck so that the roll of carpeting would be pulled off of plaintiff's truck. Vollmar requested plaintiff to help him unload the truck, and together they lifted up one end of the roll of carpeting so that the chain could be passed around the roll.

Two rolls were pulled off of plaintiff's truck and onto the ground in that manner, but the third was jammed against the side of the truck in such a way that plaintiff and Vollmar could not get the chain around the end of the roll. Plaintiff suggested that they pry the roll by means of an iron bar, but Vollmar replied he didn't have one or didn't know where one was. Vollmar then got up on the rolls and hooked the chain, which had hooks on both ends, on the carpet fabric. Plaintiff protested that Vollmar would tear the carpeting, but Vollmar answered that there was no other way to get the roll off. Vollmar told plaintiff to stay in the trailer and to pull the roll to get it away from the lip of the trailer. Vollmar pulled the roll with his truck, and when the roll moved, plaintiff passed it over the lip. However, instead of ceasing to pull, when plaintiff called to Vollmar to stop, Vollmar continued to pull, plaintiff stepped back, and as the two and a half foot roll started to fall it swung and one end hit plaintiff and pinned him against the side of his trailer, injuring him.

Plaintiff filed a claim against D & C for compensation under the Workmen's Compensation Law, which resulted in a compromise settlement whereby D & C and its insurer, Liberty Mutual Insurance Company, paid plaintiff $3495.43, exclusive of medical aid of $248.00. Plaintiff's action against Custom followed.

During the course of plaintiff's case in chief he introduced and read into evidence Item and Rule 568 of the National Motor Freight Classification A10, apparently promulgated by the Interstate Commerce Commission, which was as follows:

" * * * When freight in a single container or freight secured to pallets, platforms or lift truck skids or freight in any other authorized form of shipment weighs 500 pounds or more per package or piece or if the greatest dimension exceeds 8 feet or the greatest and intermediate dimension exceeds 4 feet, loading shall be performed by the consignor and unloading shall be performed by the consignee—the person to which it's being sent. On request of the consignor or the consignee the truck driver will assist the consignor or the consignee in loading or unloading."

Plaintiff's evidence showed that the rolls of carpeting exceeded the foregoing dimensions and plaintiff testified on both direct and cross-examination that he worked under the ICC regulations, that when requested by the consignees he was to help unload the truck if the item of freight exceeded the foregoing weight or size, and that he was assisting in the unloading in the instant case at the request of Custom, the consignee.

█ Inasmuch as they would dispose of the appeal, if valid, we consider first two contentions made in defendant's brief. Initially defendant maintains that under the evidence plaintiff was a statutory employee within the meaning of Section 287.040(1), RSMo 1969, V.A.M.S., and that the trial court should have directed a verdict for defendant at the close of all the evidence.

The defense that plaintiff was a statutory employee of defendant and hence could not maintain an action at common law against it is an affirmative one and the burden of pleading and proving that defense rested upon the defendant. Kemper v. Gluck, 327 Mo. 733, 39 S.W.2d 330. Defendant sustained that part of its burden regarding pleading for in its amended answer defendant alleged, as an affirmative defense, that plaintiff, D & C, and it were at the time all operating under the Workmen's Compensation Act and " * * * That the liability, if any, of the Defendant to Plaintiff, Robert Sippel, was as a statutory employer under the Missouri Workmen's Compensation Act, and, in particular, Section 287.040, RSMo, * * *."

Section 287.040(1) provides:

"1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business."

If the evidence showed, as a matter of law, that plaintiff was a statutory employee of the defendant the trial court should have directed a verdict for defendant, for then plaintiff's " * * * exclusive remedy was under the Workmen's Compensation Act. That act, if applicable, would supersede any right plaintiff might otherwise have had to maintain an action at common law. See Section 287.120." Walton v. United States Steel Corporation, Mo., 362 S.W.2d 617, 620.

In Walton v. United States Steel Corporation, supra, the defendant maintained a warehouse in St. Louis for the processing (cutting to the required length and shape to suit the needs of customers) and sale of steel and aluminum products. It did not own any trucks or employ any drivers to

provide a delivery service. All deliveries were made by Highway and City Delivery Service, Inc., which had entered into a written contract with defendant Steel Corporation to provide that service. Plaintiff, a truck driver, was employed by Highway and regularly drove one of its trucks used to deliver defendant Steel Corporation's products to its customers. The trucks furnished by Highway for delivery of defendant's products had a sign thereon displaying the name of defendant and the defendant had furnished plaintiff a number of uniforms with the words "United States Steel," or the initials "U.S.S." thereon, which he wore when hauling defendant's products. Plaintiff was injured on defendant's premises when steel being loaded on to plaintiff's trucks slipped and struck him. Plaintiff sought and obtained compensation benefits from Highway and its insurer, and then instituted a common law action against defendant Steel Corporation. There, as here, the defendant pleaded the affirmative defense of the statutory employee doctrine, and on appeal maintained that the trial court had erred in denying its motion for a directed verdict at the close of all the evidence.

The court reasoned that in determining whether the court erred in failing to direct a verdict for defendant it was required to bear in mind that a court should never withdraw a question from the jury unless all reasonable men, in the honest exercise of a fair, impartial judgment, would draw the same conclusion from the facts which condition the issue; that where there is uncertainty arising from a conflict in the testimony or because, the facts being undisputed, fair-minded men would honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury; that if the work being done at the time of the injury was not an operation of, or in the usual course of, the business which the employer customarily carried on upon his premises, but is only incidental, ancillary, or auxiliary thereto then the contractor, subcontractor, or his employee who is injured is not a

statutory employee within the meaning of the act; that in determining whether a person is a statutory employee it is very difficult and perhaps undesirable, to formulate a generally applicable rule and there is no infallible test; and that each case presents its own peculiar difficulties and must be determined upon its particular facts. The Supreme Court concluded (1. c. 622):

"We have decided from a consideration of the facts heretofore stated that all reasonable minds would not conclude that plaintiff's work was an operation of the usual business which defendant customarily carried on upon its premises. In that situation the issue presented a question of fact which it was appropriate for the jury to decide and hence the court properly overruled defendant's motion for a directed verdict."

We regard the facts in Walton as being considerably stronger than those in the instant case, particularly regarding the necessary elements of whether the unloading of the rolls of carpeting on defendant's premises from the trailer of Roadway, a common carrier who had transported them in interstate commerce, was " * * * an operation of the usual business which he (defendant) there carries on * * *," Section 287.040(1), or whether it was only incidental, or auxiliary thereto. As pointed out in Walton, and quoted from Perrin v. American Theatrical Co., 352 Mo. 484, 488, 489, 178 S.W.2d 332, 334: " * * * 'if the work being done at the time of injury is not an operation of, or in the usual course of, the business which the employer customarily carries on upon his premises, but is only incidental, ancillary, or auxiliary thereto, then the contractor, subcontractor, or his employee who is injured while engaged in such character of work is not a "statutory employee" within the meaning of the act, * * *' * * *." As stated in Walton, supra, (1. c. 362 S.W. 2d 622) under the evidence " * * * the issue presented a question of fact which it was appropriate for the jury to decide

and hence the court properly overruled defendant's motion for a directed verdict."

As an additional affirmative defense defendant pleaded in its amended answer that "* * * at the time and place mentioned in Plaintiff's Petition the Plaintiff was acting as a volunteer employee of the Defendant engaged in an operation of the usual business of the Defendant on the premises of the Defendant and at said time the Defendant was operating under the provisions of the Missouri Workmen's Compensation Act and that any cause of action the Plaintiff may have is limited to the provisions of the Missouri Workmen's Compensation Act." Defendant now contends that under the evidence the plaintiff was a "borrowed servant," and that the court should have sustained its motion for a directed verdict at the close of all the evidence.

We have grave doubts that a plea that an individual is a "volunteer employee" can be equated with one that the individual is a "borrowed servant." In fact, the term "volunteer employee" would appear to be inherently contradictory, for as defined in § 287.020(1) the word "employee" in the act is construed to mean "* * * every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election. * * *" Thus in Lawrence v. William Gebhardt, Jr. & Son, Mo.App., 311 S.W.2d 97, the Bridlespur Hunt Club engaged Gebhardt, a contractor, to construct and remodel some buildings, and Gebhardt hired Lawrence as one of his helpers. Bridlespur had hired certain other men to construct a fence on its property. Lawrence, who was to paint a building for Gebhardt, ran out of paint, and while waiting for Gebhardt's return Lawrence offered to help the men building the fence, during the course of which he was injured. This court denied Lawrence's claim for compensation against Bridlespur, stating (l. c. 104), "* * * Clearly, claimant was not an employee under this definition (Section 287.020), but was a mere volunteer." And

see Triplett v. Beeler Motor Co., Mo., 268 S.W.2d 814.

It has been uniformly held that the defense under the borrowed servant doctrine, like that of the defense of statutory employee, is one which must be affirmatively pleaded and proven, and cannot be raised for the first time on appeal. Dunn v. General Motors Corp., Mo., 466 S.W.2d 700. However, even if we grant the defendant the boon of a liberal construction of its amended answer, and assume that the defendant by the term "volunteer employee" intended to raise a defense under the borrowed servant doctrine, we are of the opinion that the trial court did not err in denying defendant's motion for a directed verdict. In its brief defendant states that "* * * The factual requirements under the 'borrowed servant' doctrine are basically the same as those of a statutory employee under Section 287.040 (1). * * *" In general, we agree, at least to the extent as to the "usual business" of the defendant, as distinguished from that which is only incidental, auxiliary, or ancillary. Dunn v. General Motors, Mo., 466 S.W.2d 700. And as we have heretofore held, that was a question for the jury.

The primary basis upon which the trial court granted defendant a new trial was that it had erred in giving Instructions Numbered 5 and 7 at the request of the plaintiff, neither of which are to be found in MAI. In his appeal plaintiff contends that the instructions were correct and proper, but neither the whole nor any part of the disputed instructions are set forth in plaintiff's brief. Civil Rule 83.05(a), V.A.M.R., clearly provides that "* * * If a point relates to the giving, refusal or modification of an instruction (or instructions), such instruction(s) shall be set forth in full in the argument portion of the brief unless the point can be readily discerned and understood from a reading of only the questioned portion of the instruction, in which event it shall be sufficient to set

forth only the latter." Our appellate courts have uniformly held that disputed instructions are not reviewable when no part of such instructions are set out in the brief. Sttae ex rel. State Highway Commission of Missouri v. Warner, Mo.App., 361 S.W.2d 159; Miller v. Wilson, Mo.App., 381 S.W. 2d 31; Lynch v. Rosenthal, Mo.App., 396 S.W.2d 272; Grubbs v. Myers, Mo.App., 407 S.W.2d 43.

Accordingly, the order granting defendant a new trial is affirmed and the cause remanded.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, new trial affirmed and cause remanded.

BRADY, C. J., and DOWD, SMITH, SIMEONE and WEIER, JJ., concur.