**Leo FERGUSON, Plaintiff-Respondent,**

v.

**AIR–HYDRAULICS COMPANY,**
**Defendant-Appellant.**

**No. 34670.**

Missouri Court of Appeals,
St. Louis District.

Feb. 27, 1973.

Robert H. Burns, Clayton, for defendant-appellant.

Kohn, Shands & Gianoulakis, Alan C. Kohn, Thomas J. Frawley, St. Louis, for plaintiff-respondent.

SIMEONE, Judge.

This is an appeal from a judgment of the Circuit Court of St. Louis County in favor of the plaintiff-respondent, Leo Ferguson, and against the defendant-appellant, Air-Hydraulics Company, in the amount of $10,000 for injuries sustained as a result of the alleged negligence of an employee of Air-Hydraulics.

This appeal involves two issues: (1) was plaintiff precluded from recovering for damages because he was contributorily negligent as a matter of law; and (2) was the plaintiff a statutory employee or a borrowed servant of Air-Hydraulics and, therefore, limited to recovery under the provisions of the Workmen's Compensation Act? We resolve both issues adverse to appellant and affirm the judgment.

At the time of his injury Ferguson had been employed by Ryder Truck Leasing (sometimes called Ryder Truck Rentals or Ryder Rents Trucks) for a period of twenty-six years. At the time of the injury, and for some twelve years prior thereto, Ryder Truck had a contract with Ryerson Steel Company under which Ryder leased a truck with Ryerson's name on it and supplied a driver (Ferguson) to Ryerson for the purpose of delivering goods. Ferguson had made deliveries to Air-Hydraulics for five or six years. Under the arrangement, Ferguson received his paycheck from Ryder. He was a member of Teamsters Local 600.

On August 21, 1970, Ferguson reported for work at Ryerson, made out the bills of lading for various stops, and checked the load on his truck. He had thirteen deliveries to make that day, the delivery of steel to Air-Hydraulics being the last. The truck was a five-ton stake bed flat

body steel truck with fourteen steel stakes, six on each side of the bed and two in the rear. The bed of the truck was 3½ to 4 feet from the ground. Ferguson testified that he arrived at the Air-Hydraulics plant in St. Louis County at approximately 11:30 a. m., drove around to the back and parked by an overhanging door. He informed the employees of Air-Hydraulics that he had a delivery for them consisting of a load of steel. The load consisted of steel sheets weighing 2,500 to 2,600 pounds. He spoke to Michael Moore who got a forklift truck. Ferguson removed three or four of the stakes on the truck bed to enable Moore to remove the load with the forklift. Ferguson knew that the forklift had been used to help unload the truck, but this was the first time that he had seen Moore operate the lift. The load of steel varied in size, 48″ x 96″ and 48″ x 120″, and was banded by steel bands. The steel rested on some two-by-fours so that there was a space between the bed of the truck and the steel to accommodate the forks of the forklift.

Ferguson testified that the forklift, in a position perpendicular to the truck and with Moore at the controls, picked up the load and began backing toward the door of the plant. When Moore attempted to lift the load of steel from the truck he had to lift the load two feet above the bed of the truck to clear the stakes. When he did so, the steel began to bend so that the ends of the steel sheets were lower and it was then necessary for Ferguson to remove two additional stakes, one from each end of the load. Moore lifted the steel and began backing up the forklift toward the door of the plant. After backing up five or six feet, the back wheels of the forklift, due to the weight in front, came up off the ground and the load and forklift tilted. When that happened, another employee (Neihoff) of Air-Hydraulics stood on a "trailer hitch" at the rear of the forklift, but according to Ferguson the back wheels did not return to the ground. Then Ferguson got on the forklift to the right of Moore who was at the controls. Ferguson

was "partly seated" on the lift with his left hand behind Moore and his right hand extended forward, holding on to a stationary bar on the forklift. There is also a movable bar on the forklift which meets the stationary bar when the lift is lowered. Moore started to back up again toward the building, made a motion to his right and said "I'm going to put it over there." When Moore made the motion toward the right, plaintiff turned his head to the right. He then felt a sharp pain in his right hand which was caught between the stationary bar and the movable one. The injury occurred when Moore lowered the load so that the movable bar came down on Ferguson's right hand which he had placed on the stationary bar. All of the above events took place within a very short period of time.

As a result of the injury Ferguson suffered a badly mauled middle finger which required amputation at the mid-knuckle, and two other fingers were injured. He testified that he endured great pain, his fingers remained numb and stiff; he was required to see a doctor regularly and missed twelve weeks of work.

On cross-examination Ferguson admitted that the normal procedure is to lower the load once it is clear of the truck, and that such procedure was customary. He also admitted that it was general practice to lower the load once it had cleared the truck, and no one had asked him to jump on the forklift. The movable bar (not the stationary one) had the words "Keep Hands Clear" printed on it. A skull and crossbones also appeared on the movable bar. Ferguson testified he did not see the words or the figure. He also stated that he did not operate a forklift himself.

On cross-examination plaintiff testified that he worked under a union contract which required drivers to "assist as much as they possibly can on all freight" and that it was customary to assist in the unloading of heavy loads. But the actual union rules were not introduced in evidence.

Air-Hydraulics' defense, as set forth in its answer, was that the plaintiff was "either a statutory employee of defendant, or an employee of defendant under the 'borrowed servant' doctrine," and contributorily negligent. During the cross-examination of plaintiff, counsel for defendant asked Ferguson if he had a workmen's compensation claim. Counsel for plaintiff objected and a colloquy ensued out of the hearing of the jury.

Counsel for defendant offered to prove that the plaintiff, if permitted to answer, would acknowledge he had received benefits under workmen's compensation and that the evidence was necessary for the defendant to rely on its defenses of statutory employee or borrowed servant. "In other words, if the jury finds that the plaintiff is either a borrowed servant or a statutory employee of the defendant, and that both the employee and the defendant were working under the provisions of the Missouri Workmen's Compensation Act, then the employee cannot maintain this action, because his remedies are exclusively under the Workmen's Compensation Act." The offer of proof was that if permitted to put on the evidence, the defendant's evidence would show there was a contract to make delivery of the steel between Ryerson and Air-Hydraulics and that the plaintiff was carrying out the delivery for Ryerson. Once plaintiff gets to defendant's premises he has the duty to assist in unloading. The unloading is in the normal and usual work performed by the defendant company on their premises and plaintiff assisted in the defendant's normal and usual work of unloading, of which defendant has control, using defendant's equipment.

The court ruled as a matter of law that Ferguson was not a statutory employee or borrowed servant of the defendant and that any evidence related to his workmen's compensation claim was inadmissible. The court ruled that Ferguson was not a "borrowed or contract employee" of the defendant company, but rather that he was a borrowed or contract employee of the Ryerson Steel Company.

Following the court's ruling on the offer of proof, the attorneys stipulated that the injury " . . . occurred on the premises of the defendant, that [it] was work normally done by the defendant; that he was there under a contract to deliver, and that, in addition to them being under the Comp Act." The attorney for the plaintiff stipulated that "if you were permitted to offer that in evidence, you could prove that." The court accepted the stipulation.

Defendant's witnesses were unable to explain Ferguson's action of getting on the lift because at the time the wheels were all on the ground.

Motions for a directed verdict at the close of the plaintiff's case and at the close of all the evidence were overruled. Plaintiff submitted his case on primary negligence of failing to keep a careful lookout for his hand. The jury rendered a verdict for the plaintiff in the amount of $10,000. Defendant's motion after trial for judgment in accordance with its motion for a directed verdict, or in the alternative for a new trial, was overruled. Defendant perfected its appeal to this court.

The defendant-appellant urges that the trial court erred in overruling its motions for directed verdict, and makes two points on this appeal: (1) that the plaintiff Ferguson was contributorily negligent as a matter of law; and (2) that Ferguson was a statutory employee or borrowed servant of the defendant at the time and place of the injury and, therefore, his remedy is exclusively under the workmen's compensation law. Defendant urges the trial court erred in ruling that as a matter of law Ferguson was not a statutory employee or borrowed servant, and that this was a question for the jury. Respondent counters by urging that the issue of contributory negligence was for the jury and Ferguson was not a statutory employee or bor-

rowed servant under the circumstances here.

In determining whether the trial court erred in overruling the defendant's motions for directed verdict and motion for judgment in accordance with its directed verdict, we must view the evidence in the light most favorable to plaintiff, and the plaintiff must be accorded the benefit of all supporting inferences fairly and reasonably deducible therefrom, and we must disregard the defendant's evidence except insofar as it might aid and assist the plaintiff. Anderson v. Welty, Mo.App., 334 S. W.2d 132.

Air-Hydraulics urges the rule that a failure on the part of Ferguson to see *what is plainly visible*, where a duty to look exists, constitutes contributory negligence as a matter of law. Branscum v. Glaser, Mo., 234 S.W.2d 626, 627. The lift had warning signs to keep hands clear and a skull and crossbones. Defendant further urges that the duty to exercise caution rests on both parties, and that a party may not disregard and fail to exercise the prudence required of him and expect the other party to protect him from his own negligence. The duty of care rests on both parties. Wells v. Wachtelborn, Mo.App., 410 S.W.2d 558, 560.

■ These principles must, of course, be applied to the circumstances of the case and the facts under consideration. Whether plaintiff is contributorily negligent depends upon the facts. Goldman v. City of Columbia, Mo.App., 211 S.W.2d 541 [1]. The issue of contributory negligence is always for the jury to decide, unless from the whole evidence and all inferences deducible therefrom, when viewed in the light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was guilty of negligence causing his injury. *Anderson,* supra. If reasonable minds can differ on the question of the plaintiff's contributory negligence, we cannot say that as a matter of law the case is not submissible to the jury. White v. Burkeybile, Mo., 386 S.W.2d 418. The circumstances may be such that because of the confused or emergency situation, or because of the suddenness of the situation, inattention to a known danger, diversion of one's attention, or the failure to heed signs does not constitute contributory negligence as a matter of law.[1] " 'Circumstances may exist under which . . . inattention to a known danger may be consistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger.' " Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, 232. See also Stottlemyre v. Missouri Pac. R. Co., Mo.App., 358 S.W.2d 437; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 622; 57 Am.Jur.2d, Negligence, § 350. Under the facts and circumstances here reasonable minds could have drawn different conclusions, and the issue was properly submitted to the jury.[2] The jury could well have

---

1. Coleman v. Buehner, Mo.App., 444 S.W. 2d 16, is an example of the situation in which there was conclusive evidence of contributory negligence as a matter of law. The plaintiff in that case stuck his hand in a meat grinder when the mechanism was in operation. This court concluded that plaintiff knew his hand was going into the opening of the meat grinder, that he knew it was dangerous, and that there was no evidence to support the theory of momentary distraction. " . . . [plaintiff] intentionally exposed himself to a known and appreciated danger . . .

[T]he evidence [was] such that all reasonable men would conclude that plaintiff was guilty of contributory negligence as a matter of law." *Coleman,* supra, at 22–23.

2. Szofran v. Century Elec. Co., Mo.App., 255 S.W.2d 443, is factually similar. In that case, the workman was killed as the result of the negligent operation of a crane by an employee of the defendant. This court found that there was substantial evidence authorizing the submission of the question of actionable negli-

found that in view of all the evidence plaintiff's actions were not negligent. Therefore, we hold that the court did not err in overruling the defendant's motions for directed verdict and motion for judgment in accordance with the directed verdict, and properly submitted the issue of contributory negligence to the jury.

■ We turn to the difficult issue of whether the plaintiff was a statutory employee or borrowed servant of the defendant.

§ 287.040(1), RSMo 1969, V.A.M.S., provides:

"Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business."

If Ferguson was a statutory employee of Air-Hydraulics, then his exclusive remedy is under the workmen's compensation law and he is precluded from maintaining this common law action against the defendant. The defense of the applicability of the compensation act is an affirmative one and the burden of proof as to such issue is upon the one asserting it. Walton v. U. S. Steel Corp., Mo., 362 S.W.2d 617, 621; Musielak v. International Shoe Co., Mo. App., 387 S.W.2d 217, 221.

■ Under the above statute our courts have held that there are three essential elements which must be present before an employee can be held to be a statutory employee. The evidence must show that: (1) the work was performed under a contract; (2) the injury must have occurred on or about the premises of the employer; and (3) the injury must have occurred while the employee was doing work in the usual course of the business of the employer. Shireman v. Rainen Home Furnishers, Inc., Mo.App., 402 S.W.2d 64, 68; Wallace v. Porter DeWitt Construction Co., Mo. App., 476 S.W.2d 129. All three elements must be satisfied before an employee is held to be a statutory employee.

There is no dispute that the injury occurred on the premises of Air-Hydraulics. The parties, however, part company as to the question of whether there was a contract and whether the injury occurred in the usual course of the defendant's business. The defendant contends that if permitted to introduce evidence, it would show that Ferguson was upon the premises pursuant to a contract and that the unloading of the steel was an operation of and in the usual course of defendant's business. Counsel for plaintiff stipulated that if permitted to offer such evidence, defendant could prove it. Air-Hydraulics asserts that this issue was one for the jury and, therefore, the trial court erred in holding that Ferguson was not a statutory employee as a matter of law.

No "litmus paper" test can be laid down to determine what particular work is within the scope of the operation of the usual

---

gence to the jury, because the facts entitled the jury to find that a duty rested upon the defendant's crane operator to maintain a lookout for decedent, to warn him of the approach of the crane, and that the crane operator could have seen decedent, warned him of the danger, and avoided the injury. This court also concluded that a ruling by the trial court that decedent was contributorily negligent as a matter of law would only have been proper if all reasonable minds would

have been compelled to reach the same determination that decedent should have maintained a constant lookout, discovered the danger, and removed himself therefrom. The court declined to be persuaded by the argument of the appellant and found that the issue was properly submitted to the jury, since the evidence left room for a reasonable difference of opinion as to whether decedent exercised ordinary care for his own safety.

business which is carried on at a particular place. Each case must be determined upon its own peculiar facts. Viselli v. Missouri Theatre Bldg. Corp., Mo., 234 S.W.2d 563; *Musielak,* supra, 387 S.W.2d at 222. There are certain general guides to aid the court in reaching a conclusion in a particular case. The right to control the employee has been held to be a determining factor in *Shireman,* supra; the right of the alleged employer to substitute one employee for another as in Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S.W.2d 918, 922; and if the work is not an operation of the usual course of business which the employer customarily carries on upon his premises but is only incidental, ancillary or auxiliary thereto, then the employee is not a statutory employee. Dixon v. General Grocery Co., Mo., 293 S.W.2d 415; *Musielak,* supra; *Shireman,* supra.

■ All of the decisions cannot be reconciled.[3] But the purpose of the statute and the policy in adopting it is to prevent an employer from eluding liability by hiring third persons as independent contractors to perform the usual and ordinary work which his own employees would otherwise perform, thus depriving an employee who engages in the usual work of his business the benefits of compensation. Nagle v. Drew, Mo.App., 409 S.W.2d 264; Perrin v. American Theatrical Co., 352 Mo. 484, 178 S.W.2d 332, 334.

In examining the purposes of the statute and the elements which must be satisfied to make the employee Ferguson a statutory employee of Air-Hydraulics, we find that there was no contract within the meaning of § 287.040(1) to substantiate the conclusion that Ferguson was a statutory employee of Air-Hydraulics. Not every type of contract will suffice to satisfy that element of the statute. The contract contemplated within the meaning of the statute must be a contract which delegates to another the usual operation of the employer's business. There is no evidence here that Air-Hydraulics at any time contracted out its unloading operation to Ryerson or Ryder or to anyone else.

Our research has not disclosed any Missouri decisions which found the presence of a contract under a similar factual situation. In all of the employment situations[4] uncovered by our research, the defendant had either contracted with the plaintiff or plaintiff's employer for the performance of certain duties in furtherance of the usual course of defendant's business. Air-Hydraulics did not attempt to discharge its unloading requirements through independent contractors. Air-Hydraulics had no contract with either Ryerson Steel or Ryder to unload. All that the record indicates is that union rules required the plaintiff to assist in the unloading if requested.

■ The relationship existing between Air-Hydraulics and Ryerson Steel, to whom the driver and truck were leased, was that of buyer and seller rather than one of contract to unload. Under such circumstances Ferguson cannot be held to be a statutory employee. The relationship is more akin to the one which existed in *Wallace,* supra, where the court held that the relationship of buyer and seller did not create the status of statutory employee, and denied a claim for compensation. The union rules which require Ferguson to assist in the unloading of the steel cannot satisfy the statutory requirement of a contract, for in order to satisfy the statute, the defendant must have entered into a

---

3. Judge Titus of the Springfield District has eloquently stated this truth. "Pursuit of the deceptive and thwarting practice of attempting to determine the existence, or not, of a statutory employer-employee relationship through a factual comparison of cases, has born a farrago of esoteric writings marinated in undis-
ciplined adjectives that do little in assisting one to satisfactory comprehension." *Wallace,* supra, 476 S.W.2d at 131.

4. Anderson v. Benson Mfg. Co., Mo., 338 S.W.2d 812; Montgomery v. Mine La Motte Corp., Mo., 304 S.W.2d 885; Kennedy v. J. D. Carson Co., Mo.App., 149 S.W.2d 424.

contract to delegate its usual operation to another.

The third element, that the injury must have occurred while the employee was doing work in the usual course of the business of the employer, must also be satisfied. This presents an even more difficult issue. The stipulation made by the attorneys was to the effect that the unloading of the steel was in the normal and usual work performed by Air-Hydraulics. While the unloading of the steel was a part of the usual business of Air-Hydraulics, we conclude, as did the trial court, that as a matter of law Ferguson was not a statutory employee of the defendant under the circumstances and facts here.

■■■ The respondent argues that getting on the forklift and assisting was wholly incidental or auxiliary to the operation of unloading and, therefore, Ferguson was not a statutory employee. See Sheffield Steel Corp. v. Vance, 8th Cir., 236 F.2d 928. But whether we regard the act of getting on the forklift as incidental or auxiliary, under the facts presented Ferguson still could not be held to be a statutory employee of Air-Hydraulics. In order to satisfy the requirements of the statute, the work performed by the employee must not only be under a contract delegating the operation of the employer's usual business and the injury occur on or about his premises, but also the work involved must be for the primary benefit of the statutory employer and not merely work which carries out the duties assigned to the employee by his direct employer. The duty to unload was cast upon Air-Hydraulics as a part of its usual business. In assisting the employees of Air-Hydraulics in the unloading, Ferguson was doing work under his union agreement and he was carrying out his duties required by *his* employer. Here Ferguson was doing work primarily for the benefit of his employer, whether Ryerson or Ryder, and only incidentally for the benefit of Air-Hydraulics. The mere fact that Ferguson engaged in the usual work of Air-Hydraulics does not make him a statutory employee. To be such, the work must be primarily for the benefit of the statutory employer and in the course of his usual work. We believe that an employee's act of unloading goods at another's plant under a union contract which requires the employee to assist in the unloading, where no contract exists between a company and the direct employer of the employee delegating the unloading operation, does not make the employee a statutory employee within the meaning of § 287.040(1). Air-Hydraulics was not delegating a portion of its usual business of unloading steel to an independent contractor. *Viselli,* supra, 234 S.W.2d at 566. There was no contract between Air-Hydraulics and Ryder or Ryerson delegating part of its usual operation. The relationship, as stated, was that of buyer and seller rather than one of a contract to unload. In delivering the steel Ferguson was required to assist in the unloading of the goods under his union contract.

■■■ Air-Hydraulics contends that Ferguson is its "borrowed servant." But it is clear that Ferguson is not a "borrowed servant" of Air-Hydraulics as that term is normally used. On several occasions this court has given extensive treatment to the requisite elements necessary to support a finding that an employee is a "borrowed servant." The guidelines were stated in Schepp v. Mid City Trucking Co., Mo. App., 291 S.W.2d 633.

"The relation of employer and employee exists between a special employer and a loaned employee whenever 'the following facts concur: (a) consent on the part of the employee to work for the special employer; (b) actual entry by the employee upon the work of and for the special master pursuant to an express or implied contract so to do; (c) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue.'" *Schepp,* supra, at 640.

The record must show that the employee engaged upon the work of and for the special master and that the employee was a specified employee to do a specified job under the terms of an express or implied contract. *Musielak,* supra, 387 S.W.2d at 221. Under these principles it is clear that Ferguson was not a "borrowed servant" of the defendant here, although he may have been a "borrowed servant" of Ryerson Steel.

Defendant urges that the issue of whether or not Ferguson was a statutory employee or "borrowed servant" while engaged in the act of unloading steel was a jury question and the trial court erred in not submitting the issue to the jury. Defendant contends that our recent decision of Sippel v. Custom Craft Tile, Inc., Mo. App., 480 S.W.2d 87, controls the instant case. *Sippel* is factually similar in that it also involved a truck driver injured during an unloading process. In *Sippel* the defendant was engaged in contracting to furnish and install carpeting and tile in apartments and other buildings with general contractors and builders. Defendant ordered some rolls of carpeting which were shipped by Roadway Express Co., a common carrier. Plaintiff was employed by D & C Truck Leasing Co., and he and the truck had been leased by D & C to Roadway. Pursuant to the directions of Roadway's dispatcher, plaintiff Sippel delivered the carpeting consigned to the defendant Custom Craft. In the course of the unloading, with one of the employees of Custom Craft, plaintiff was injured. Sippel filed a common law action against Custom Craft although he received workmen's compensation from D & C. Custom Craft contended that Sippel was a statutory employee and that the trial court should have directed a verdict for it. We held that the issue of whether the unloading of the carpeting was an operation of or in the usual course of the business of the defendant that he there carries on was one for the jury. We relied on *Walton,* supra, in which our Supreme Court held that where the defendant did not provide a delivery service, and all deliveries were made under a contract, the issue of whether the work of unloading was within the usual course of the business of the defendant was a question for the jury. The issue in *Sippel,* unlike the issue here, was whether the unloading of the rolls of carpeting on defendant's premises was an operation of the usual business which the employer there carried on. In that posture we held the issue presented was one of fact for the jury. But under the facts here the unloading of steel was an operation of and in the usual course of the business of Air-Hydraulics and, therefore, the question presented is not one of fact but one of law, i. e., whether Ferguson was a statutory employee of Air-Hydraulics. Furthermore, *Sippel* did not discuss or refer to the necessity of a contract as required under § 287.040(1), under which the unloading function was delegated to another. A contract was not an issue in *Sippel* as it is here.[5]

The issue in this case is not one of fact as in *Sippel,* whether the unloading operation was in the usual course of the defendant's business, but is one of law, whether Ferguson is a statutory employee. Hence, the trial court did not err in holding that Ferguson was not a statutory employee.

---

5. Our finding of the absence of a contract between the plaintiff and the defendant is in accord with the decision of Schafer v. Kansas Soya Products Co., 187 Kan. 590, 358 P.2d 737. That case also involved a truck driver who was making a delivery and voluntarily, without any request or direction from the employees of the defendant, assisted in the unloading process. The Kansas Supreme Court examined a statute very similar to § 287.040 (1) and concluded that the evidence indicated the driver was employed to deliver the soybeans to the defendant and was not required to perform any additional act by his employer. The court concluded that since there was no evidence that defendant had contracted with the driver's immediate employer to do a portion of its work, the driver could not be held to be a statutory employee of the defendant as a matter of law.

Therefore, we hold that Ferguson was not guilty of contributory negligence as a matter of law, and the trial court did not err in holding as a matter of law that Ferguson was not a statutory employee or a "borrowed servant."

The judgment is affirmed.

SMITH, P. J., and KELLY, J., concur.